Gates vs. Raymond.

GATES, Respondent, vs. RAYMOND, Appellant.

*April 10 — April 27, 1900.*

| 106 | 657 |
|-----|-----|
| 111 | 246 |

| 106 | 657 |
|-----|-----|
| 116 | 422 |

*Sale of chattels: Rescission for fraud: Restoration of consideration.*

The general rule, that if a sale or agreement be made by means of fraud, the injured party, not being guilty of laches sufficient to estop him, may rescind the same and treat the agreement or sale as void upon condition of his restoring the wrongdoer to his former position, is subject to this exception, among others: If the defrauded person, by reason of the wrongful conduct of the wrongdoer, is rendered incapable of fully restoring the latter to his former position, to that extent such restoration is not necessary to a rescission of such sale or agreement.

[Syllabus by MARSHALL, J.]

APPEAL from a judgment of the circuit court for Clark county: A. J. VINJE, Judge. *Reversed.*

Action of replevin, the subject of which was a horse. Plaintiff claimed to have obtained the horse of defendant in a horse trade, which the latter claimed was a fraudulent and illegal transaction and insufficient to vest any title to the property in plaintiff. On the trial the court refused to allow defendant to prove his defense of fraud under a general denial, whereupon the answer, by permission of the court, was amended by alleging, in effect, that September 14, 1898, defendant was the owner of the property in controversy; that on such day, for the purpose of cheating and defrauding defendant out of such property, the plaintiff gave him large quantities of intoxicating liquor and encouraged and induced him to partake thereof till he was wholly incapable of doing any business, and then consummated his fraudulent purpose in the following manner: Plaintiff and one or more associates acting in his interest proposed to defendant that they play the game of cards called poker, plaintiff offering to aid defendant in obtaining money with which to enter the game by trading horses and giving him

VOL. 106 — 42

$20 to boot.   Such proposal and offer were accepted by defendant, and the parties then spent a considerable time together playing the proposed game, resulting in plaintiff and his associate or associates winning from defendant the $20 paid to him as aforesaid and also the right to the horse which he was to get of plaintiff. The trade was not actually consummated by delivery of the horses.

The court ruled that the trade was a transaction independent of what occurred afterwards; that the defense of fraud as pleaded was insufficient for want of facts showing that defendant had restored plaintiff to his former position; that the gambling transaction itself was not a defense, because the horse in question was not lost by defendant in such transaction.   Evidence offered to establish both of such defenses was excluded, and defendant's counsel duly excepted thereto.

There was evidence to the effect that plaintiff and defendant agreed to trade horses, plaintiff to have from the defendant the horse in controversy and to give defendant a particular horse and $20; that the money was paid; that defendant never had possession of the horse he was to get from plaintiff; that plaintiff obtained the horse he was to have from defendant by taking it from the latter's premises during his absence, claiming that defendant authorized the act; that defendant retook the horse from plaintiff's premises and had the property in his possession at the time of the commencement of this action; that the value thereof was $50, and the value of its use while detained from plaintiff was $30.

The court directed a verdict in plaintiff's favor on such evidence, and judgment was rendered accordingly, from which this appeal was taken.

For the appellant there was a brief by *L. M. Sturdevant* and *R. F. Kountz*, and oral argument by *Mr. Sturdevant*. To the point that it was not necessary, under the circum-

stances, to return or offer to return what he received in the horse trade, before defending in the action, they cited Cobbey, Replevin, § 418.

For the respondent there was a brief by *MacBride & MacBride* and *J. R. & C. R. Sturdevant*, and oral argument by *R. J. MacBride*. They contended, *inter alia*, that a party who would rescind a purchase of personal property on the ground of fraud or drunkenness must show that he returned or offered to return all the property received by him. *Becker v. Trickel*, 80 Wis. 484; *Hyslip v. French*, 52 Wis. 513; *Grant v. Law*, 29 Wis. 99; *Wilbur v. Flood*, 16 Mich. 40; *Carpenter v. Rogers*, 61 Mich. 384; *Baird v. Howard*, 22 L. R. A. 846, 849; *Thackrah v. Haas*, 119 U. S. 499. There is nothing to show that it is out of the power of appellant to restore the property received from respondent. Any other $20 would pay back the money. If appellant lost the horse for which he traded in the manner claimed, nevertheless he was still the owner thereof, and could reclaim the same from the winner, or recover its value.

MARSHALL, J.   The judgment appealed from must be reversed because the court excluded the evidence offered to prove that plaintiff by fraud induced defendant to agree to trade horses and was guilty of such action in carrying out his fraudulent scheme that defendant was rendered incapable of restoring him to his former position as a condition of rescinding such agreement.

The trial court was guided by the general rule that a transaction consummated by fraud of one of the parties thereto, to the injury of the other, is not absolutely void, but is voidable upon condition of a restoration of the wrongdoer to his former position.

Such condition is equitable in its nature; therefore, necessarily, it goes no further than good conscience requires. That limitation admits of several important exceptions,

many of which will be found distinctly pointed out in *Friend Bros. C. Co. v. Hulbert*, 98 Wis. 183; *Gay v. D. M. Osborne & Co.* 102 Wis. 641, one of which exactly fits the facts pleaded in the answer in this case. It is this: When a wrongdoer has, by his own act, put it out of the power of his victim to restore him to his former position, he cannot profit thereby. In such circumstances the injured party may, upon doing all that he reasonably can under the circumstances to restore the wrongdoer to his former position, reclaim of him all the benefits which he obtained from the wronged party as the result of the trade. *Guckenheimer v. Angevine*, 81 N. Y. 394; *Merchants' Nat. Bank v. Tracy*, 77 Hun, 443; *Hammond v. Pennock*, 61 N. Y. 145; *Masson v. Bovet*, 1 Denio, 69; Kerr, Fraud & M. (2d ed.), 371.

Reference is usually had in the books to *Masson v. Bovet* as containing an accurate statement of the exception particularly mentioned. Such statement is as follows: " The restoration is not exacted on account of any feeling of partiality or regard for the fraudulent party. The law cares very little what his loss may be, and exacts nothing for his sake. If, therefore, he has so entangled himself in the meshes of his own knavish plot that the party defrauded cannot unloose him, the fault is his own; and the law only requires the injured party to restore what he has received, and, so far as he can, undo what had been done in the execution of the contract. That is all that the defrauded party can do, and all that honesty and fair dealing require of him. If these fail to extricate the wrongdoer from the position he has assumed in the execution of the contract, it is in no sense the fault of his intended victim, and, upon the principles of eternal justice, whatever consequences may follow, they should rest on the head of the offender alone." The idea is that the wrongdoer cannot insist, as a condition of rescission, on a return of that which, by his fraud, the wronged party does not control.

This is sound doctrine. If the plaintiff here, as alleged, as a part of a fraudulent scheme to rob the defendant of his property, induced him to drink intoxicating liquor until he was incapable of taking care of himself in a business transaction, and then, with knowledge of such situation and intentionally taking advantage thereof, plaintiff·induced defendant to agree to trade horses and participate with him and his confederates in gambling at cards to the end that, by reason of defendant's condition of intoxication he would lose to his associates, or some of them, the property plaintiff gave or agreed to give him for his horse, and such end was accomplished as so designed, the defendant being thereby rendered incapable of restoring plaintiff to his former position as a condition of rescinding the horse trade, such restoration was not necessary to such rescission. There is no circumstance in such a situation to sustain a claim that defendant ratified the trade, and the law will not aid plaintiff in protecting himself by his own wrong from the consequences of his plot, whatever the loss to him may otherwise be.

The trial court properly ruled that the facts alleged to the effect that the horse trade was made in order to enable the defendant to·participate in gambling, did not constitute a defense. The horse in controversy was not won from defendant in the gaming transaction, so sec. 4532, Stats. 1898, under which a person may recover money or property lost by playing or waging on any game, does not apply. Neither was the horse transferred or agreed to be transferred to the plaintiff as security or as a part of any contract involving security for money advanced for the purpose of gambling, so as to render the transaction void under sec. 4538.

*By the Court.*— The judgment of the circuit court is reversed, and the cause remanded for a new trial.