## FARMERS STATE BANK OF BLAKELEY v. CHARLES I. MILLER.[1]

July 9, 1926.

No. 25,425.

**Defense of fraud in purchase of stock waived by signer of note renewing it three times.**

Defendant executed his promissory note in 1921 to evidence his indebtedness for the purchase price of corporate stock. The note was immediately transferred for value to plaintiff which however may not be a holder in due course. Thereafter the note was renewed three times, interest being paid on each occasion. A small payment has been made also on the principal. The defense is fraud, the principal misrepresentation being that the stock, at the time of the purchase, was paying a dividend of 8 per cent per annum. Long before the last renewal of the note, defendant knew that the stock was not paying any dividends. *Held* that by the renewals of the note defendant waived his defense of fraud.

Bills and Notes, 8 C. J. p. 445 n. 17.

---

See 3 R. C. L. 1106; 1 R. C. L. Supp. 989; 5 R. C. L. Supp. 218.

Action in the district court for Sibley county to recover on a promissory note. The case was tried before Tifft, J., and a jury which returned a verdict in favor of defendant. Plaintiff appealed from an order denying its motion for judgment notwithstanding the verdict or for a new trial. Reversed with directions.

*F. C. & H. A. Irwin*, for appellant.

*W. H. Leeman*, for respondent.

[1]Reported in 209 N. W. 869.

STONE, J.

Action upon a promissory note wherein the defense was fraud and the verdict went for defendant. Plaintiff appeals from the order denying its motion for judgment or a new trial.

The note bears date of February 4, 1924. It is the third renewal of one executed by defendant in September, 1921. The original note ran to Heinrich Chemical Company as payee and evidenced defendant's indebtedness for corporate stock of that company which he had just purchased. In defense he alleges, and his evidence tends to prove, that the then cashier of plaintiff assisted the stock salesman of the Heinrich Company and made the representations which really induced his purchase of the stock and the execution of the original note. In substance, the misrepresentations charged to the cashier by defendant are that the stock was a good investment; that it was then selling at 93 per cent of its face value and that it was paying a regular annual dividend of 8 per cent. Immediately after its execution the note was discounted with the plaintiff.

We have not given much attention to plaintiff's claim that it is a holder in due course. On the evidence for defendant, the cashier who made the representations was the only representative of the bank in purchasing the note. Therefore if we had to decide the question, it is not likely that we could hold plaintiff to be a holder in due course. The rule of State Bank of Morton .v. Adams, 142 Minn. 63, 170 N. W. 925, might require a contrary holding. We pass that question without decision for there is another point which is decisive.

The original note ran for six months. It was then renewed and a payment made not only of interest but of $40 on the principal. The first renewal note ran for a year. Interest was again paid and a second renewal given in 1923. The operation was repeated in February, 1924, when the note in suit, the third renewal, was given and another year's interest paid. In the meantime and relatively soon after his purchase, defendant must have discovered the utter falsity of the representation, the principal one claimed, that the stock was paying regularly an 8 per cent dividend. To that extent

defendant discovered the fraud which he claims was perpetrated upon him long before his last renewal of the note and probably before one or more of the others. He was not only put upon inquiry but was advised of the fraud, if fraud in fact existed. Incidentally defendant was in touch with the home office of the Heinrich Company. Annually he received its financial statements. We take it for granted that as to defendant each of those statements was probably deceptive. They showed a substantial surplus but in order to do so carried as an asset an item for "Good will and stock bonus" of over $800,000, and another, equally suggestive of padding, referring to "Patents, Trade Marks and Formulae" of $150,000. But even upon that assumption, and as a matter of law, defendant must be charged with knowledge of the fraud, if in fact he was defrauded, before he executed as a third renewal of the original the note now in suit.

The foregoing brief resume of the case is sufficient to show that, within the rule of Thorpe v. Cooley, 138 Minn. 431, 165 N. W. 265, defendant has waived the fraud of which he claims to have been the victim. That rule has special application to a case such as this where a note has been given and then purchased by a holder who acts honestly and is itself morally free from blame. Its cashier at the time of the original transaction may have gone altogether too far in urging defendant to purchase the stock, but plaintiff itself as a legal person has acted in good faith. The genuineness of defendant's obligation to it has been represented by defendant to be valid by the renewals and payments already referred to. After such a course of dealing there would be a manifest injustice in relieving defendant of liability. It is the purpose of the rule of Thorpe v. Cooley, supra, to prevent such a result.

Order reversed with directions to enter judgment notwithstanding the verdict for plaintiff.