## JAMES O. PROPER AND OTHERS v. MARIA R. PROPER.[1]

June 5, 1931.

No. 28,392.

D. C. Sheldon and A. J. Rockne, for appellant.
Plato E. Sargent, for respondents.

[1]Reported in 237 N. W. 178.

STONE, J.

Action on contract wherein plaintiffs had a verdict. Defendant appeals from an order denying her motion for judgment notwithstanding or in the alternative for a new trial.

Defendant was the second wife and is the widow of Cyrus O. Proper, late a resident of Goodhue county, who died testate February 4, 1929. Plaintiffs James O. and Lewis G. Proper, Nellie E. Proper Miller, and Martha Proper White are his children; and plaintiffs Katherine, Willard, and Howard Hahn are his grandchildren, all issue of the testator's first marriage. April 6, 1929, his will had been proposed for probate in Goodhue county. That day plaintiffs procured from defendant, his widow, the contract in suit. It recites that plaintiffs had "prepared objections to the probate of said will to be filed before the time fixed for the hearing" on the petition for its admission to probate. In consideration of their "permitting said will to be admitted to probate without contest or objection on their part," defendant promised to pay plaintiffs $15,000. Accordingly plaintiffs did not contest the will. The record suggests that the estate did not exceed $15,000. Of that, defendant, had she so elected, will or no will, was entitled to at least one-third. So by the contract in question she may have promised plaintiffs something like $5,000 more than they could have gotten in any event.

Within a few days after making this contract defendant consulted counsel, who advised her to attempt a rescission. Notice of rescission was prepared and immediately served on plaintiffs. It recited that the contract had been procured from defendant by "false and fraudulent representations" which at the time she had believed. It asserted that she desired to repudiate and rescind the "purported agreement and the whole thereof, and refuses to in any manner be bound by the terms thereof." The notice concluded with an offer on defendant's part that, if the probate court had made an order "admitting said will to probate, it or any subsequent orders may be vacated," and that all concerned might file such objections to admission of the will to probate as they might desire, defendant

expressly waiving any objection she might have had by reason of the omission of plaintiffs to make timely appearance in opposition to the probate of the will.

No question is made as to the sufficiency of defendant's pleading and offered proof on the issue of fraud. Her offers were rejected only because she was not then in position, it was considered, to put plaintiffs in statu quo. The proceeding for the probate of the will and the distribution of the estate thereunder was thought to have proceeded so far that there was no assurance that it could be re-opened to permit plaintiffs to contest the will. Be that as it may, the crucial rulings, those which prevented defendant from intro-ducing any evidence of fraud inducing the contract, were wrong.

■ One who has been induced by the deceit of another to enter into a contract may, if he proceeds promptly, rescind by his own act or by action at law. I. L. Corse & Co. v. Minnesota Grain Co. 94 Minn. 331, 102 N. W. 728, 729; 2 Dunnell, Minn. Dig. (2 ed. & Supp.) § 1815. Confusion of thought can be avoided only by not confusing rescission, a remedy of equitable origin and process, with the other courses available which are of legal origin and nature. Treating this case first from the standpoint of rescission, the error below was in considering the question of defendant's ability to restore plaintiffs to their former status from the standpoint of the condition at the time of the trial rather than on the basis of things as they were at the moment defendant demanded rescission.

As observed in I. L. Corse & Co. v. Minnesota Grain Co. 94 Minn. 331, 336, 102 N. W. 728, time was when the party seeking rescission was held under the duty of making "a strict and rigid tender of the things received." But, as there observed, the "trend of later cases is in favor of a more reasonable and equitable application of the rule. The party guilty of the fraud is not entitled to anything more than substantial justice, and a fair opportunity to receive what he parted with. * * * It is only necessary for the defrauded party in such cases to make a fair offer to return what he received under the contract, and demand what he parted with; and, if his offer and demand be refused, it is sufficient if he makes proof thereof

at the trial, and restoration in such practicable way as the court may direct." See also Clark v. Wells, 127 Minn. 353, 149 N. W. 547, L. R. A. 1916F, 476.

"That a party seeking rescission of a contract must return, or offer to return, what he has received under it, and thus put the other party as nearly as is possible in his situation before the contract, is the law. But this rule is wholly an equitable one; impossible or unreasonable things, which do not tend to accomplish equity in the particular transaction, are not required." 3 Williston, Contracts, § 1530.

A perpetrator of fraud inducing a contract cannot complain of the impossibility of restoring the status quo where that condition is the result of his own wrong. Gates v. Raymond, 106 Wis. 657, 82 N. W. 530.

If, when defendant demanded rescission and made all and the only tender she could to restore the status quo ante, it was possible by plaintiffs' co-operation to procure a rescission, they are not now in position to derive any advantage from the fact that they refused such co-operation. In such case the failure of rescission would be chargeable to them rather than defendant. The question then of the possibility of restoring the status quo, if the case were one of rescission and nothing more, should have been decided below as of the time when defendant offered to rescind, rather than as of the later date of the trial, when, due to plaintiffs' own refusal to co-operate, restoration may have become impossible. It is inconceivable that, if timely application had been made to the probate court by all the parties concerned, the fact of the contract and its rescission being made to appear, plaintiffs would have been denied the right to contest the will. If, as defendant charges, plaintiffs were guilty of fraud inducing the contract, it was their duty to allow rescission. They cannot interpose their own wrong as an obstacle to defendant's right. So, if they were guilty of the fraud charged, and, solely because they prevented a rescission when it was promptly demanded, it is now too late to restore the status quo, plaintiffs are not in a position to complain. The law ordinarily

leaves perpetrators of fraud in any predicament resulting from their own machinations. 9 C. J. 1210, citing inter alia Neblett v. McFarland, 92 U. S. 101, 23 L. ed. 471.

■ There is another aspect of the case. Plaintiffs' position is that there was no rescission and that there cannot be any. Taking that as true, it nevertheless remains that the contract is wholly executory as to defendant; and, this being an action for its enforcement, she may interpose fraud as a defense. One who has been induced by the fraud of the other party to bind himself contractually is under no duty to sue first. If he has not waived the fraud or done anything inconsistent (see Bauer v. O'Brien Land Co. 144 Minn. 130, 136, 174 N. W. 736) he may await an action on the contract and then plead the fraud in defense. Kirby v. Dean, 159 Minn. 451, 199 N. W. 174; Becker v. Nelson, 164 Minn. 367, 205 N. W. 262; 12 R. C. L. 408. So, putting the question of rescission aside, or taking that phase of the case just as plaintiffs want it taken, it was error to deny defendant's offers to prove, as a defense to this action on the contract, the fraud which she had pleaded.

Order reversed.