# SHELL PETROLEUM CORPORATION v. CLARENCE P. ANDERSON AND OTHERS.[1]

March 29, 1934.

No. 29,794.

*Thompson, Mitchell, Thompson & Young* and *Sawyer & Lord,* for appellant.

*Leach & Leach,* for respondents.

*STONE, Justice.*

Action in unlawful detainer commenced in the municipal court of the city of Owatonna and tried *de novo* on appeal to the district court. After verdict for defendants, plaintiff moved in the alternative for judgment notwithstanding or a new trial and appealed from the order denying the motion.

The involved property consists of a gasolene filling station and its appurtenances in Owatonna. It is owned by defendant Clarence

[1] Reported in 253 N. W. 885.

P. Anderson. Its possession and use are claimed by plaintiff under a lease of August 1, 1930, from the defendants Anderson. (Defendant Rose J. Anderson is joined because, as wife of Clarence P., she is colessor in the lease.) The term of the lease was for five years expiring July 31, 1935. Concurrently plaintiff, under written contract of the same date, entered into and executed as part of the same transaction, employed defendants Clarence P. Anderson and Herbert Freeman (who from now on will be mentioned as though they were the only defendants) "to superintend and operate" the service station for an indeterminate period, the "employment to continue so long" as the employe complied with "the terms and conditions" of the employment contract, but not beyond the term of the lease. The lease and employment contract were considered below to have been parts of the same transaction and so as constituting but one contract. Defendant Anderson in any event became both plaintiff's lessor and its employe. Defendant Freeman became only an employe.

Anderson and Freeman had been operating this filling station, selling plaintiff's products, for some months before March 1, 1930. On that date the Andersons, by a lease similar to the one now in suit, leased the property to plaintiff. The old lease and contract of March 1 are not important except for their evidentiary bearing on the issue of fraud hereinafter considered. Except for dates and rates of commission upon the sale of plaintiff's products, there is no substantial difference between the two pairs of agreements.

By their contract of employment defendants were required to sell only plaintiff's gasolene and other products. A controversy arose in August, 1932, the details of which are not now important except for the fact that the defendants discontinued sale of plaintiff's products and began selling those of a rival manufacturer. That, of course, was a breach of the contract of employment. Plaintiff thereupon demanded possession of the filling station under the lease. Defendants' refusal to vacate brought about this action.

Defendants pleaded, in justification of repudiation of their contract obligation to sell only plaintiff's products, an antecedent breach by plaintiff. That point was ruled against defendants below as a

matter of law. In consequence the case went to the jury and defendants prevailed, upon their claim that plaintiff fraudulently induced defendants to sign the lease and contract of August 1, 1930.

The claim is that, on the basis of the original contract and lease of March 1, a new contract and a new lease were agreed upon to begin as of August 1. In the language of the charge:

"It is the claim of the defendants that important matters agreed to in the oral negotiations were omitted from the written contracts; that the agents of the plaintiff knew of such omissions but falsely represented to the defendants that all agreements had been included in the written contracts, and for that reason the defendants claim that these contracts were procured through fraud and misrepresentation and that, therefore, they are not binding and are of no effect."

There has been some confusion in the argument as to whether the important thing so omitted was a "gasolene clause" or a "cancellation clause." Both lease and contract were upon printed forms prepared and currently in use by plaintiff. As far as the printed matter goes, they are identical with the printed forms used for the original contract and lease of March 1, 1930. The documents themselves do not give one the idea that they were carelessly prepared or heedlessly signed. Part of each, on an attached sheet signed by defendants, is an agreement showing the mutual consent of the parties to the cancelation of the earlier contract and lease. Certain pen and ink changes of printed matter are initialed by the defendants.

■ Ordinarily, where a signature of a contract has been procured by fraudulent false representation of its contents the defrauded party is considered as having never assented to its terms and so the supposed contract is void—not merely voidable. C. Aultman & Co. v. Olson, 34 Minn. 450, 26 N. W. 451. But in such a case, in order to make the agreement void rather than voidable, the signature must be procured without negligence on the part of the defrauded party. Restatement, Contracts, § 475. Illustration 2 under that section is this:

"A and B informally agree to execute a sealed or unsealed written contract. A prepares a document containing different provisions from those agreed upon and by fraudulent misrepresentations induces B to sign it without reading it. The fraud renders B's promise voidable, but since B was negligent in not reading it, it is not void."

In this case defendants were obviously negligent in signing. If their story of fraud is true, their negligence alone does not bar their assertion of the fraud. But, under the rule stated, it renders the contract voidable rather than void. 3 Williston, Contracts, § 1488.

■ If we assume sufficient evidence to take to the jury the claim that defendants were fraudulently deceived as to the contents of the documents on August 1, 1930, when they signed, it must yet be held as matter of law that they discovered the absence of the wanted clause not later than August of 1931. Apparently at that time there was effort to get amendment of the old contract. Clarence Anderson testified that then he "did read the contract." In that connection he says that he "called their attention there was no gasolene clause in the contract, and they [plaintiff's agent] said there was, and I got it out and said there wasn't." It is suggested, and we assume correctly, that the phrase "gasolene clause" should read "cancellation clause." It is immaterial which, because whatever it was, Clarence Anderson has demonstrated by his own testimony that he knew that the clause which he now considers so important was not in the contract as early as August 30, 1931.

With that knowledge, defendants continued under both lease and contract, one collecting rentals and both their commissions as though everything were all right, until August, 1932. For substantially a year after admitted discovery of the fraud they continued performance as though nothing were wrong. If that is not affirmance, with knowledge of fraud, real or merely alleged, there can be no affirmance. And once a contract induced by fraud has been affirmed by the defrauded party with knowledge of the deception, he cannot thereafter disaffirm for the same fraud.

Neither damages nor right thereto, if any, are now important or even helpful to defendants. Their action in denying plaintiff's right of possession is an attempted rescision of the lease. They

have no right to rescind for the simple reason that defrauded parties cannot disaffirm a contract after having affirmed it with knowledge of the fraud. It is stated in Restatement, Contracts, § 484, that "the power of avoidance for fraud or misrepresentation is lost if the injured party after acquiring knowledge of the fraud or misrepresentation manifests to the other party to the transaction an intention to affirm it, or exercises dominion over things restoration of which is a condition of his power of avoidance." (The exception stated in § 482 is not now relevant.) That has long been the law here. Thompson v. Libby, 36 Minn. 287, 31 N. W. 52; Crooks v. Nippolt, 44 Minn. 239, 46 N. W. 349; O'Neil v. Davidson, 147 Minn. 240, 180 N. W. 102; Moe v. Shaffer, 150 Minn. 114, 184 N. W. 785, 18 A. L. R. 1194; Farmers State Bank v. Miller, 168 Minn. 199, 209 N. W. 869. See also Kirby v. Dean, 159 Minn. 451, 199 N. W. 174, where the essential difference between the right to damages for fraud and the right to rescind for fraud is attempted to be explained.

For defendants is stressed Proper v. Proper, 183 Minn. 481, 485, 237 N. W. 178, 180, particularly the statement that "one who has been induced by the fraud of the other party to bind himself contractually is under no duty to sue first." That sentence is immediately conditioned thus: "If he has not waived the fraud or done anything inconsistent * * * he may await an action on the contract and then plead the fraud in defense." Plainly, these defendants, after knowledge of the alleged fraud, affirmed the contract, thereby at once, and automatically, barring the right to rescind which otherwise might have been theirs and without which they have no possibility of avoiding the lease. By the way, Proper v. Proper, 183 Minn. 481, 237 N. W. 178, was an action on a contract wholly executory as to the defendant. She had not affirmed it. On the contrary, she had promptly gone as far as she could to rescind by her own act. If the present defendants, promptly on discovery of the alleged fraud, had repudiated lease and contract, refusing further performance under both, they would have brought themselves within the scope of Proper v. Proper, 183 Minn. 481, 237 N. W. 178. Their affirmance with knowledge of the fraud, an

affirmance evidenced, emphasized, and confirmed by substantially a year's performance after discovery of the fraud, clearly puts out of question any right to rescind for the same fraud.

There is no occasion for another trial of the issue of fraud. Judgment should be entered for plaintiff notwithstanding the verdict unless defendants, by a motion for new trial, can show good cause for reëxamination of the issues other than fraud.

The order appealed from must be reversed and the case remanded for further proceedings not inconsistent with this opinion.

So ordered.