# CHISHOLM WATER SUPPLY COMPANY v. CITY OF CHISHOLM.[1]

May 5, 1939.

No. 31,957.

*Frank M. Talus,* City Attorney, and *George H. Spear,* for appellant.

*Naughtin & Henley,* for respondent.

GALLAGHER, CHIEF JUSTICE.

Appeal from an order denying in part and granting in part defendant's motion for amended findings and denying its motion for a new trial.

[1]Reported in 285 N. W. 895.

The action was instituted by the Chisholm Water Supply Company, a corporation, against the city of Chisholm, a municipal corporation, to recover accrued amounts with interest and attorneys' fees alleged to be due for water taken between November, 1936, and August, 1937, by defendant from the wells of plaintiff in pursuance of a certain contract entered into between the parties on November 3, 1931. In its answer defendant denied the legality of the contract and asked that it be cancelled. Issues were joined by plaintiff's reply, denying the illegality of the contract, setting up waiver and ratification of all irregularities, if any existed, and estoppel to assert the same.

At the conclusion of the testimony the trial court made findings of fact and conclusions of law, the latter being to the effect that plaintiff was entitled to judgment in the sum of $15,242.22, representing the unpaid contract price of the water and attorneys' fees, less costs of beneficiation. Defendant, by a motion to amend or for a new trial, proposed that certain other findings of fact be substituted for those adopted; that the conclusions of law be amended to the effect that the contract was procured by fraud, was *ultra vires*, illegal, and contrary to public policy; and that plaintiff be given judgment for only the reasonable value of the water. Some of the findings of fact proposed by defendant were accepted, but the conclusions of law were not altered. On appeal defendant contends that the trial court erred insofar as it failed to adopt the findings of fact and conclusions of law presented by defendant.

Since the real question to be determined is whether or not the contract in question is legally enforceable, we will accept as true those facts found by the trial court to which no specific objection is made and those offered but rejected. The paragraphs which follow until otherwise indicated represent the result of this process.

Prior to its incorporation as a city of the fourth class in 1934, defendant was a municipal corporation with a duly created water, light, power, and building commission (hereafter called the commission). At all times here in question it had a municipal water system, including a reservoir, settling basins, a pressure tank,

pumps, connecting mains, and a distribution system for public and private use. For many years prior to July, 1931, or thereabouts, water was obtained at the Monroe Mine and pumped through connecting mains into the reservoir owned and maintained by the village.

In May, 1930, the commission, without public advertisement for bids as required by law, made a certain 20-year contract with one C. R. Smyth providing for the development of a water supply from wells. Smyth thereafter put down several wells and equipped them with pumps, erected pump houses, and constructed pipe lines from the wells to the reservoir. The village began to operate the plant under the 1930 contract in July, 1931, and has since continued to operate it. At about the same time, Smyth and others organized the plaintiff corporation and assigned to it the 1930 contract and the plant. From July, 1931, until the following November, water was taken by the village in pursuance of the agreement.

In August, 1931, plaintiff requested the commission to call for bids because of some question as to the legality of the contract then in force. Pursuant to this request, a call for bids was made on the 16th of the following month, whereby it was announced that bids for the development, maintenance, and furnishing of an adequate water supply would be received until October 6, 1931 (a period of 20 days) ; that the bidder would be expected to develop such water supply from wells, to equip them with requisite equipment, and to maintain the same in serviceable condition; that a certified check in the sum of $15,000 should accompany bids. Detailed specifications, referred to in the call, substantially described the existing plant of plaintiff.

The only bid received in response to this call was that of plaintiff. This bid was in the form of a contract in practically the same terms as that entered in 1930. Two of the three members of the commission voted in favor of accepting the offer; one voted against it. The agreement was signed in the name of the president and secretary of the commission and acknowledged as having been done under the authority of the commission at a regular meeting.

The terms of the contract need not be stated in detail. It is sufficient to say that it contains some provisions which are departures from the call for bids particularly in the respect that it gives plaintiff the right to terminate the contract if performance should become unprofitable.

On August 30, 1934, the contract was amended so as to provide for an additional discount of 25 per cent for prompt payment. During the following month defendant became incorporated into a city of the fourth class and, during the next month, adopted a home rule charter which provides in part that all contracts, debts, and obligations created or incurred by the village of Chisholm, or its council and officers, are ratified and confirmed as the debts and obligations of the city of Chisholm.

Other relevant facts which appear undisputed in the record follow. On November 10, 1936, the commission passed a resolution wherein it was asserted that the contract was terminated and that from that time water would be taken as if no contract existed. Upon being notified of this resolution, plaintiff wrote to defendant informing it that it would be held strictly to the terms of the contract and that any water taken was to be paid for in accordance therewith. From November 10, 1936, to September 26, 1937, the city continued its practice of taking water from the wells of the plaintiff but has not paid for it.

On November 3, 1936, the voters of the city voted on the question of whether or not the Monroe Mine should be abandoned as a source of water. Abandonment was favored by a vote of 2,447 to 820.

The substance of appellant's argument is that the 1931 contract was procured by fraud; that it was *ultra vires* because in violation of 1 Mason Minn. St. 1927, §§ 1199, 1857, 1229, and 1865; that the contract was incapable of ratification; that plaintiff cannot assert an estoppel since it participated in the doing of the *ultra vires* acts.

Insofar as the claim of *ultra vires* is concerned, we agree that the commission exceeded its power in that: (1) It let the contract without a proper call for bids; and (2) the contract contained terms not included in the call and purported to bind the city to an abandonment of the Monroe Mine.

Apart from the question of fraud, we are of the opinion that the principles enunciated in City of Staples v. Minnesota Power & Light Co. 196 Minn. 303, 265 N. W. 58, 59, govern this case. There, as here, the claim was made that the contract was the result of private negotiation rather than competitive bidding. There it was argued that the contract was void because not properly approved by the mayor as required by charter. Here it is contended that the contract is void because certain provisions were not approved by the voters as required by statute. There, as here, the city had power to enter the contractual relation. It is only by the fact that it was conceded in the Staples case that the agreement was made in good faith that the cases are distinguishable. The holding of this court in the Staples case was that when the parties to a contract one of whom is a municipality have fully performed for half the ten-year term of such contract, and the latter has permitted the other party to put itself to expense in performance which will result in substantial loss if the contract is set aside, the city is estopped to question the contract. In so deciding the court said [196 Minn. 306]:

"Under the rule of Tracy C. T. Co. v. City of Tracy, 143 Minn. 415, 176 N. W. 189, it may well be that ratification, in the strict sense, can be accomplished only by action of the council itself in the manner demanded by the charter. But here plaintiff for five years has permitted defendant to assume, and to act on the assumption, that the contract was valid. Hence, by its laches or estoppel, or both, it is prevented from setting up the mere lack of authority of its agents which resulted only from their failure to obey the charter provisions mentioned."

In the instant case, defendant for about five years permitted plaintiff to assume and act on the assumption that the contract was valid. And after having been notified in 1936 that any water taken from the wells was to be considered as taken in pursuance of the contract, defendant continued to take the water for a period of about a year. In fact the voters of the city voted to abandon the only other source from which water could feasibly be obtained. The expenditures made by the plaintiff in reliance on the contract

and the loss which will be suffered if it is treated as void are considerable. These considerations make the Staples case a controlling precedent except insofar as there is here a claim of unfairness, illegality, and fraud. See also Wakely v. County of St. Louis, 184 Minn. 613, 240 N. W. 103, 84 A. L. R. 920.

With reference to the claim of fraud, the trial court found against defendant on that issue. While the body of the order contains no specific finding concerning fraud, the memorandum which is a part of the order and must be considered in connection with it contains this statement:

"Although in the answer there is an allegation of fraud in the making of the contract, there is no evidence in this case substantiating the allegation and there is no claim of fraud in the briefs of the defendant."

In answer to defendant's assertion that the contract was an improvident one, the trial court in its memorandum said:

"The defendant claims this contract was an improvident one. The contract can hardly be described as an improvident one when the testimony shows that the cost to the municipality under plaintiff's contract was sometimes under and sometimes over the Monroe contract. The commission must have understood the terms of the contract in view of the fact that this is the fourth contract they had signed within a period of a year containing provisions very similar to the ones which they now object to."

These conclusions of the trial court are supported by evidence which was adduced at the trial. Respecting the cost of the water obtained by the contract in relation to the cost of the water obtained from the mine, Mr. Tancig, a member of the commission at and prior to the time the contract in question was made, gave testimony based on cost sheets kept by the commission which supports the statement made by the trial court.

We do not propose to justify the conduct of the commission in exceeding its power by letting the contracts in an improper manner. Nevertheless, we feel that the facts mentioned by the trial court and

others appearing in the record support the conclusion that there was no fraud. In requesting bids Smyth must have realized that he was assuming the risk of losing his entire investment of time and money. There is no showing that he exerted any improper influence on the members of the commission in an attempt to induce them to make the call for bids an empty gesture. The desire of the commission to keep out financially irresponsible bidders and to obtain a water supply substantially the same as that which was being used at the time is understandable. The previous experience which it had with water from the Monroe Mine, the difficulty of obtaining well water in the vicinity of the village, the satisfactory quality of the water supplied by the plaintiff—these considerations would naturally induce prudent men to attempt to preserve a water supply which it was reasonable to believe could not easily be duplicated.

We conclude, therefore, that this case is no different in principle than that of the City of Staples v. Minnesota Power & Light Co. 196 Minn. 303, 265 N. W. 58. The defendant is estopped from asserting that the contract is invalid.

The contention that by the terms of the contract the commission has divested itself of statutory authority requires no extended discussion. If it has power to encourage the development of a water supply, it must be empowered to protect those with whom it contracts by reasonable concessions. The claim that the city has no power to enter the contract under any circumstances finds no support in the statutes.

Order affirmed.

STONE, JUSTICE (concurring).

All that is said by the Chief Justice has my cordial approval. But I beg leave to add just a little. The defense is an effort by the city to rescind. If we assume fraud inducing the contract, it was well known to the city at the time, or shortly after, the contract was made. So the city's long performance of its contractual obligations was plainly with complete knowledge of whatever fraud there was. That is, with knowledge of the fraud, it affirmed the contract. Therefore it cannot now disaffirm. Its right to rescind, if there

ever was such right, has been lost by its own election. This is the rule of Shell Petroleum Corp. v. Anderson, 191 Minn. 275, 253 N. W. 885, and of the Restatement, Contracts, § 484.

MR. JUSTICE HILTON, incapacitated by illness, took no part.