## UNION PUBLIC SERVICE COMPANY v. VILLAGE OF MINNEOTA AND OTHERS. STATE EX REL. UNION PUBLIC SERVICE COMPANY v. ED GITS AND ANOTHER.[1]

February 20, 1942.

Nos. 33,012, 33,013.

[1]Reported in 2 N. W. (2d) 555.

94

*Hall, Catlin & Gold* and *Otis, Faricy & Burger,* for appellant.

*Field & Field,* for Otter Tail Power Company, successor by merger to Union Public Service Company.

*A. L. Bromen,* Village Attorney, and *Kyle & Kyle,* for respondents.

HOLT, JUSTICE.

In July 1940 the Union Public Service Company, a corporation of this state,. sued the village of Minneota and its officers and common council for a declaratory judgment that ordinance No. 165 was in force and effect. In December of 1940 the company instituted an action in *mandamus* to compel the president of the village council of the village of Minneota to sign ordinance No. 165 and the recorder to attest it and to compel the publication of the ordinance as required by law. In both suits answers and return were interposed presenting the issues to be tried. The two suits were consolidated for trial. Findings of fact and conclusions of law were made and filed in each case against the company. Its motion in each case for amended findings or a new trial was denied. The company appeals in each case. There is no conflict in the oral testimony. The documentary must speak for itself.

The main facts established without dispute are these: The Union Public Service Company, hereinafter referred to as appellant, under a franchise that expired in 1937, had furnished the village of Minneota and its inhabitants electric current for heat, light, and power, occupying the village streets with its distributing system. In the summer of 1939 negotiations were being had between appellant and the village for a new franchise. In the meantime, current was furnished at the rates named in the expired franchise. At a meeting of the council held September 13, 1939, ordinance No. 165, prepared by appellant and granting it a franchise for 20 years upon stated terms to use the village streets, alleys, and public grounds for its distributing system, was presented. The ordinance was rejected by the unanimous vote of the

council. Then, at the same meeting, a motion "that the Village grant the Union Public Service Company a franchise for five years at the proposed reduced rates" was adopted—three of its five members voting for it, one refusing to vote, and one absent. Thereupon the meeting adjourned to September 19. September 14 appellant's manager in charge of the negotiations, informed of the action of the council of the day previous, took the ordinance No. 165 and lined out the word and figure "twenty (20)" and inserted in place thereof the word and figure "five (5)." In all other respects the ordinance remained as when rejected. On September 18 the manager mailed a notice to appellant's patrons in the village that the proposed new rates would go into effect. At the adjourned meeting of September 19 the ordinance No. 165, as altered by appellant's manager, was adopted by the same vote as the motion mentioned. The president of the village refused to sign the ordinance, and the recorder declined to attest it, and it has never been published. In the latter part of October 1939, appellant billed its patrons in the village for current furnished at the rates specified in ordinance No. 165, and has done so in each subsequent month. And in January 1940 appellant expended $700 upon its equipment so as to enable it to furnish the current one of its patrons in the village needed. On January 2, 1940, the village council attempted to rescind ordinance No. 165, and in August 1940 duly enacted and published ordinance No. 166, which in terms repeals ordinance No. 165. Appellant never filed a written acceptance of ordinance No. 165. The above facts are in substance incorporated in the findings of fact in both suits.

First, the action for a declaratory judgment. Appellant takes the position in this court that a five-year franchise to occupy the village streets with its distributing system vested by the adoption of the motion of September 13 and the mailing on September 18 by appellant of its notice that the proposed reduced rates would be put into effect. It is argued that whatever was said or done or omitted to be said or done thereafter cannot divest appellant of the right already acquired. And the contention now is that the

right to use the village streets is derived from Mason St. 1927, § 7536, and not from the village. Its consent only is needed to vest appellant with a franchise to occupy the village streets. Of course, if this be true as to a five-year period it would also be true as to a 20-year period. In view of the fact that villages as well as cities are responsible for the condition of streets, alleys, and public grounds, it would seem desirable that the rights of the public utilities named in § 7536 be in a more formal document than a mere motion. The usual practice in this state has been by an ordinance of the municipality and written acceptance thereof by the public utility company. However, we think appellant is not in position to claim a vested right in virtue of the motion of September 13 and the notice mailed by it five days later. Both the village and appellant clearly acted on the basis that ordinance No. 165 was intended to embody the agreement respecting appellant's right to occupy the village streets. Why otherwise was the alteration made and the document again presented for adoption at the adjourned meeting of September 19? In its complaint, ordinance No. 165, adopted September 19, is declared as the basis for the right it asks the court to adjudge. A copy of ordinance No. 165 is attached to the complaint and made a part thereof. We do notice the indefinite statement in the complaint that the ordinance was adopted "on or about September 13th, 1939," but that does not exclude the obvious fact that the negotiation between appellant and the village was concluded and embraced in ordinance No. 165, adopted on September 19, 1939, and upon no other document whatsoever. It is in the form of an ordinance both as to title and contents, and as such must be published. Mason St. 1927, §§ 1196, 1197. We may also call attention to some of the terms of ordinance No. 165. It is therein provided that appellant's use of the village streets, alleys, and public grounds for its poles, lines, and distributing system "shall be subject to such reasonable regulations as may be imposed by the Village Council." It stipulated that the rates specified "shall become effective with the effective date of this Ordinance, and shall not be increased during the life of this fran-

chise unless there is an increase in the cost of generating and distributing the energy to be generated and distributed pursuant to the terms of this franchise over the cost of generating and distributing it at the time the rates become effective, in which event the rates shall only be increased to the extent necessary to absorb such additional cost, provided, however, there shall be no increase in such rates except by and with the consent of said Village Council." By section 3 thereof, the village granted appellant, its successors and assigns, permission to trim all shrubs and trees in streets, alleys, and public grounds of said village interfering with its proper erection and maintenance of any poles, cables, wires, or any other fixtures installed in pursuance of the authority hereby granted, provided that said grantee shall save said village harmless from any liability in the premises. Section 5 gives appellant the right to assign the franchise subject to the terms of the ordinance. Section 6 provides that appellant "shall, if it accepts this Ordinance and the rights hereby granted, file a written acceptance of the franchise rights hereby granted with the Village Recorder within ninety (90) days from the date of the publication of this Ordinance." Section 7 reads: "This Ordinance shall be in full force and effect from and after its passage and publication, as provided by law." Under the undisputed facts, it must be held that the negotiations between appellant and the village council for a franchise resulted in no other agreement than ordinance No. 165.

It cannot be doubted that in view of the responsibility of the village for the proper care of its streets and its interest in obtaining favorable rates from public service utilities named in said § 7536 that such agreements should be formal and definite. To give any meaning to the motion in respect to proposed rates, recourse must be had to ordinance No. 165. Neither in the motion nor in the mailed notice are the rates stated. The claim of appellant that the proposition of law expressed in C. M. & St. P. Ry. Co. v. Sprague, 140 Minn. 1, 167 N. W. 124, is determinative here we think not well founded. There the litigants had pleaded and

tried the case on the theory that the railway company had a right to recover for bridging a drainage ditch. But this court held that it was its legal uncompensated duty to so do, and therefore no cause of action existed. The court held that when the record shows there is no cause of action or no defense, the appellate court will so determine no matter on what theory the pleadings were framed or the issues were tried in the court below. Friend v. Friend, 158 Minn. 31, 196 N. W. 814, cited by appellant, is not in its favor.

It seems to us that to prevail in the declaratory judgment action appellant must rely on the doctrine of equitable estoppel or estoppel *in pais*. Appellant, invoking such estoppel against respondents, must show (1) a lack of knowledge on its part of the truth of the facts in question; (2) reliance upon the conduct of the party against whom estoppel is invoked; and (3) action based thereon of such character as to change the position for the worse of the party invoking the estoppel. 19 Am. Jur., Estoppel, § 42, p. 643. It cannot be said that appellant lacked knowledge of the facts in question. It had legal advice from the start of the negotiations. The ordinance pleaded was its work. It kept closely in touch with the doings and conduct of respondents. It knew that an ordinance must be signed by the village president, attested by the recorder, and published. With this knowledge, can it be said that appellant relied upon the conduct of respondents and of appellant's patrons in the village in accepting and paying the billings at the rates in October 1939 and succeeding months and in making the improvement in its equipment to the extent of $700 in January 1940? We think not. It knew all the time that the ordinance would not be signed, attested, or published; that more than 100 inhabitants had filed with the village council protests against the ordinance, which it knew had never been signed, attested, or published, and which it had never accepted according to its terms by filing a written acceptance with the recorder. As is well stated by the trial court in the memorandum attached to the findings:

"Reducing the rates with an anticipation that an ordinance would be adopted is not sufficient to base a claim of estoppel because of resulting financial prejudice. * * * The village cannot be held responsible for the premature action of the plaintiff, having made no misrepresentations which could or did mislead the plaintiff. The plaintiff knew, or should have known, when it reduced the rates, that the requirements necessary for the granting of a valid franchise had not been complied with, either the statutory requirements or the requirements set out in the ordinance itself. In a letter to the village council dated September 29, 1939, the attorney for the plaintiff writes that the 'rates have, of course, been put into effect on the assumption that the ordinance would be adopted.' * * *

"The improvements in the distributing system were made long after the plaintiff was aware of the invalidity of the ordinance and the attempt by the council in January to repeal it. From the nature of the improvements it is a fair inference that they were not made in reliance upon a new franchise, but in order to take care of the load of certain customers.

"In this case, in the opinion of this court, the essential elements of an equitable estoppel as related to the defendants are lacking. As to the plaintiff there was not that lack of knowledge and of the means of knowledge as to the truth of the facts in question, nor reliance upon the conduct of the defendants nor any action based on such conduct, of such a character as to change plaintiff's position prejudicially."

It is conceded that a village or municipality is subject to equitable estoppel the same as an individual, so no attention will be given to the authorities cited on that proposition. Nor need we place any legal significance on the attempted rescission or repeal of ordinance No. 165 by the action of the village council on January 2. The same must be said of the finding No. 7 that the reduction of rates granted by appellant to the village was part of a plan of a general rate reduction in 17 other municipalities served by it. The finding was not challenged as without support in the

record, but appellant in the motion for amended findings asked that No. 7 be stricken and another finding substituted. We may assume without so deciding that finding No. 7 has no effect on the issue of estoppel.

Appellant cites and relies upon decisions of this court in City of Staples v. Minnesota P. & L. Co. 196 Minn. 303, 265 N. W. 58; Chisholm Water Supply Co. v. City of Chisholm, 205 Minn. 245, 285 N. W. 895 (decided on the authority of the Staples case) ; Northwestern Tel. Exch. Co. v. City of Minneapolis, 81 Minn. 140, 83 N. W. 527, 86 N. W. 69, 53 L. R. A. 175 (on reargument) ; Dimond v. Manheim, 61 Minn. 178, 63 N. W. 495. The Staples case was where the city sought a declaratory judgment to annul a contract to furnish electric current for the operation of its municipal plant for a period of ten years. It was held that after both parties had for five years performed the contract without objection the city was estopped to assert that the contract had not been let by competitive bidding, and was approved by motion rather than by ordinance or resolution. It is to be noted that it was not an ordinance, nor did it relate to a franchise to use and occupy the city streets. The Chisholm case also concerned a contract for water supplied. The case of Northwestern Telephone Exchange Co. was one where the company, granted a franchise by an ordinance, sought an injunction against subsequent ordinances alleged to be arbitrary and confiscatory of rights vested under the first. The decision is not helpful in this controversy, and the same may be said of Dimond v. Manheim, 61 Minn. 178, 63 N. W. 495, though a well considered case on the elements of estoppel *in pais* or equitable estoppel as applied to a real estate controversy.

Other cases of this court cited by appellant are Thom v. Thom, 208 Minn. 461, 294 N. W. 461; Hanson v. Beaulieu, 145 Minn. 119, 176 N. W. 178; Munsch v. Stelter, 109 Minn. 403, 124 N. W. 14, 25 L.R.A.(N.S.) 727, 134 A. S. R. 785. These decisions do not deal with estoppel to question the validity of an ordinance. Both parties refer to Davies v. Village of Madelia, 205 Minn. 526, 287 N. W. 1, but it is to be noted that that was a case where the vil-

lage entered into a contract for the construction of a power plant, which it had the authority to do. The contract, however, was subject to the approval of the electoral vote of the village, which had not been held when two taxpayers began the suit to enjoin the contract. The decision is not here controlling. It did not relate to a franchise to use or occupy the public streets of the village.

We do not deem it necessary to refer to the many cases cited from other jurisdictions. It is quite clear that upon facts like those in the City of Chicago v. P. C. C. & St. L. Ry. Co. 244 Ill. 220, 91 N. E. 422, and in Illinois T. & S. Bank v. City of Arkansas City (8 Cir.) 76 F. 271, 34 L. R. A. 518, equitable estoppel was properly invoked and applied. In the case at bar appellant has not acquired under that doctrine rights which may be decreed by a declaratory judgment.

As to the *mandamus* action. On appellant's theory that ordinance No. 165 adopted September 19 was and is a nullity, because its franchise vested prior thereto, it cannot prevail, for surely respondents should not be *mandamused* to sign, attest, or publish a nullity. Again, if appellant claims rights under No. 165, as an ordinance or contract, it is met by this well settled law that before an ordinance takes effect it may be revoked or repealed by the village council either by motion, resolution, or ordinance. Gormley v. Day, 114 Ill. 185, 28 N. E. 693; State ex rel. v. Excelsior C. & G. Co. 69 Kan. 45, 76 P. 447; Carpenter v. Yeadon Borough, 208 Pa. 396, 57 A. 837; Neill v. Ward, 103 Vt. 117, 153 A. 219; Waukesha Hygeia M. S. Co. v. Village of Waukesha, 83 Wis. 475, 53 N. W. 675. Both by statute (Mason St. 1927, §§ 1196, 1197, and Mason St. 1940 Supp. § 1197-2) and by the terms of ordinance No. 165, it did not become operative or go into effect until published.

The orders are affirmed.