FRED J. KITTY & others *vs.* CITY OF SPRINGFIELD & others.[1]

Hampden.    September 27, 1961. — December 11, 1961.

Present: WILKINS, C.J., SPALDING, WHITTEMORE, CUTTER, & KIRK, JJ.

*Parliamentary Procedure. Zoning,* Amendment. *Municipal Corporations,* Officers and agents. *Custom. Public Officer.*

In a city council whose rules provided that a motion to reconsider a vote should be in order immediately at the meeting at which the vote was taken or, upon notice then given, at the next meeting, and not afterwards, and that the vote upon a motion to reconsider should not be reconsidered, a proposed amendment of the city's zoning ordinance was finally acted upon adversely at, and ceased to be pending before the council at the dissolution of, a meeting at which the proposal failed of adoption for want of the necessary percentage of affirmative votes and a motion then made for immediate reconsideration was lost, without

---

[1] The building commissioner, the members of the city council, Mary E. Gallagher, and Ernest F. Carlson, Inc. The last two of these are interested in the land for which a zone change was sought.

Kitty v. Springfield.

notice being then given for subsequent reconsideration, and could not be acted on again by the council thereafter.   [323, 325, 326–327]

After a city council, on a proposal to amend the city's zoning ordinance, had taken adverse action which, according to the council's rules, was final action whereby the proposal ceased to be pending before the council, neither an alleged misapprehension of members of the council in voting on the proposal nor an alleged custom justified further action attempted to be taken by the council on the proposal.   [325–326]

Upon a declaratory decree that a purported amendment of a city's zoning ordinance had not been validly adopted, it was to be assumed that the building commissioner would observe such declaration in issuing building permits thereafter.   [327]

BILL IN EQUITY filed in the Superior Court on July 3, 1959.

The suit was heard by *Lurie*, J., on a master's report.

*Robert A. Gelinas*, for the plaintiffs.

*Arthur A. Frankl*, for the defendant Ernest F. Carlson, Inc.

CUTTER, J.   Three residents of Springfield seek (1) a declaration whether Springfield's zoning ordinance has been validly amended to rezone certain land, and (2) an injunction to prevent the building commissioner from issuing a permit to build a multiple dwelling.   This dwelling would not comply with the zoning ordinance if the amendment is invalid.   The case was referred to a master, whose report was confirmed.   By final decree the bill was dismissed.   The plaintiffs appealed.

Upon the issue[2] whether the amendment was properly adopted, the master found the following facts.   The city council consists of eighteen councilmen and eight aldermen. After a report by the planning board recommending the change, the common council, on May 11, 1959, by a vote of twelve to five (one member absent) purported to pass the zone change ordinance to be ordained.   A motion for immediate reconsideration was made and lost.   The ordinance was then sent to the board of aldermen but was returned to the common council because the necessary fourteen votes (three-quarters of full membership) required for passage had not been obtained in the common council,

---

[2] The plaintiffs originally contended that the zoning amendment constituted "spot zoning."   That contention has not been argued by them upon this appeal.

inasmuch as a "proper protest" had been filed with the city clerk. See G. L. c. 40A, § 7, inserted by St. 1954, c. 368, § 2.[3] On May 25, 1959, the common council again voted to pass the ordinance to be ordained by a vote of sixteen to one (one member being absent). On that day, the president of the common council wrote on the form of ordinance, "Previous vote taken on passage to be ordained was not sufficient due to the signed petition in opposition. The ordinance was presented for passage to be ordained a second time and passed." The ordinance thereafter was passed by the board of aldermen and approved by the mayor.

The question for decision is whether the common council could proceed to pass the amendatory ordinance on May 25, 1959, after the inadequate vote on May 11, 1959, and the subsequent failure of a motion for reconsideration. The provisions of the council's joint rules and of the rules of the common council governing reconsideration are set out in the margin.[4] At the time of the votes mentioned above, "it was the custom or practice of the [c]ouncil, after an adverse vote on a zone change was had, to permit a subsequent vote on the proposed change either at the same meeting or a later one. This procedure ha[d] been resorted to on many occasions for some years prior to the vote on the ordinance in question. Later votes have taken

---

[3] Section 7 reads, "No change of any zoning ordinance . . . shall be adopted except by a two-thirds vote of all the members [of each branch] of the city council . . . where there are two branches, . . . provided, that in case there is filed with the city clerk prior to the close of the first hearing before the city council or committee thereof a written protest against such change, stating the reasons, . . . [then are stated the requirements for signers, not here relevant], no such change of any such ordinance shall be adopted except . . . if . . . [the council] consists of nine or more members, by a three-fourths vote of all the members . . . of each branch where there are two branches."

[4] Section 22 of the joint rules of the city council and § 20 of the rules of the common council are closely similar. In the following quotation words italicized appear only in § 22, and words in brackets appear only in § 20, viz., "A motion for a reconsideration of a vote shall be in order for immediate consideration[,] if made by a member voting with the *majority* [prevailing side]; or if notice be given by any member at the meeting at which the vote passed, it shall be in order at the next *regular* meeting [which meeting shall not be held within twenty-four hours after the giving of such notice], and not afterwards, and a vote deciding a motion to reconsider shall not be reconsidered." The rules of the common council provide that, "on . . . matters of parliamentary procedure not provided for specifically in its rules, or by law or ordinance," Cushing's Rules of Order shall govern.

place on some occasions many months after an original adverse vote, sometimes later than one year from the date of the first vote. . . . [I]t is the custom or practice of the [c]ity [c]ouncil to consider a negative vote on a zone change final only after the passage of a motion 'Leave to Withdraw.' "

We must consider the votes of the common council in the light of the statutes applicable to zoning law changes, which indicate the Legislature's intention that, at every stage, there shall be procedural safeguards against ill considered action. City council votes upon such changes are regulated in certain respects by c. 40A, § 7 (see footnote 3, *supra*). Section 6 (as amended through St. 1957, c. 137⁵) is closely related to § 7. The prescribed procedure includes (1) hearings, after notice, before the planning board and the council or one of its committees, (2) a report by the planning board, and (3) votes by specified portions of the membership of both branches of the city council.

By § 8 (inserted by St. 1954, c. 368, § 2) it is provided that "no proposed ordinance . . . making a change in any existing zoning ordinance . . . which has been unfavorably acted upon by a city council . . . shall be considered on its merits by the city council . . . within two years after the date of such unfavorable action unless the adoption of such proposed ordinance . . . is recommended in the final report of the planning board . . . required by" § 6. We assume (because the zoning change under discussion was recommended by report of the planning board) that § 8 would not prevent a renewed presentation of the proposed ordinance within two years of May 11, 1959, if done in accordance with the procedure out-lined in §§ 6 and 7. Nevertheless, § 8 does indicate a legislative intention that, with respect to changes not recommended by the planning board, unfavorable action by a city council shall for two years prevent any new action of the same character. Thus in some cases, it must be determined precisely when "unfavorable action" occurs. Sections 6 and 7 do not suggest

---

⁵ See later amendments of § 6 by St. 1959, c. 317, § 1, and St. 1961, c. 151.

that the council procedure for adoption of a zoning change is to be different where the planning board recommends a change from what it would be if the planning board disapproves the change.

By the common council's twelve to five vote on May 11, 1959, the ordinance then failed of passage. Concerning the further proceedings on May 11, the record says only that "a motion for immediate reconsideration was made and lost." There is no suggestion that any notice was given on May 11 of intention to seek reconsideration at the next meeting. Upon a strict application of the written rules, when the May 11 meeting dissolved, the proposed ordinance was no longer pending before the common council because it had been defeated. Under usual parliamentary procedure, it would have been too late to move for reconsideration after the May 11 meeting had adjourned. See *Coleman* v. *Louison,* 296 Mass. 210, 215. See also Cushing, Manual of Parliamentary Practice (1950 ed.) § 257; Robert, Rules of Order Revised, § 36; Robert, Parliamentary Law, pp. 88–89, 413. Cf. *Dodsworth* v. *Mayor of Medford,* 308 Mass. 62, 65. Cf. also *Tuell & Tuell* v. *Meacham Contracting Co.* 145 Ky. 181, 183–186 (reconsideration sought within two months held within a reasonable time and proper in the circumstances); *Dal Maso* v. *Board of County Commrs.* 182 Md. 200, 207; McQuillin, Municipal Corporations (3d ed.) § 13.48; Rhyne, Municipal Law, § 5–12. On the general subject of reconsideration, see *Mansfield* v. *O'Brien,* 271 Mass. 515, 518–521.

It is contended, however, that this case cannot be decided solely by strict application of parliamentary rules. First, it is argued that the action on May 11, 1959, may be corrected because it was taken under a misapprehension that no protest had been filed and that a two-thirds vote would suffice under § 7. The record does not establish that any such misapprehension existed and, in any event, it is immaterial whether the five common council members who voted against the ordinance on May 11 did so on the merits of the issue or because they thought the passage of the ordinance would not be endangered by their adverse votes.

As responsible members of a municipal legislative body their votes must stand as cast, unless duly and seasonably changed in accordance with applicable parliamentary principles.

Second, it is said that it was a custom of the city council "after an adverse vote on a zone change . . . to permit a subsequent vote . . . either at the same meeting or a later one." We need not consider whether valid rules could embody a custom thus permitting recurrent presentations of a zoning change after unfavorable action. Such a rule obviously would encourage the exertion of continuing pressure upon objecting members of the council to change their votes in a matter as to which the Legislature has shown its intention that there shall be careful deliberation. We are not confronted with such a rule for the custom is not shown to have any sanction in the rules. The refusal to reconsider the twelve to five vote, on May 11, left that vote in effect. By the rules of the common council and on general parliamentary principles, the proposed ordinance thereupon had failed of adoption and had ceased to be pending. In the light of the legislative importance attached to each stage of the zoning change procedure and (see § 8) to a rejection of a proposed change, we think that a custom (inconsistent with the written rules) cannot justify reviving at a later meeting a measure which has failed of adoption by reason of votes final under the written rules.

If the defendants' contention based upon the custom were to prevail, nothing would prevent reconsideration of a final vote many months after that vote followed by enactment then of an ordinance which many persons affected thereby might reasonably have believed had failed of enactment. In respect of zoning changes, it is obviously desirable that members of the public shall be able to ascertain the legislative status of a proposed change at all times, and to rely on unfavorable action, final in accordance with applicable rules, as a complete defeat of the proposal.

We regard the proposed ordinance as disposed of adversely and finally by the vote of May 11. At the next meeting, when its enactment was again attempted, there

was no matter pending before the common council upon which action could be taken by suspension of the rules or otherwise. The defendants thus gain no help from cases holding, with respect to a still pending matter, that restrictive rules may be suspended informally. Cf. *Wheelock* v. *Lowell,* 196 Mass. 220, 229–230; *Coleman* v. *Louison,* 296 Mass. 210, 213. Cf. also *Nevins* v. *City Council of Springfield,* 227 Mass. 538, 544–545, 547; Rhyne, Municipal Law, § 5–9.

This is not a case where action of a municipal legislative body, taken informally or without strict compliance with applicable rules and procedures, has remained unchallenged for a considerable period. The bill was filed promptly (July 3, 1959) after the attempt on May 25 to revive the ordinance in the common council and within a very few days of the purported approval of the ordinance by the mayor on June 29, 1959.

The final decree is reversed. A new final decree is to be entered declaring that the proposed ordinance was not validly adopted. It is assumed (see *Board of Health of Woburn* v. *Sousa,* 338 Mass. 547, 554) that the building commissioner will refrain from issuing, in reliance upon the rejected ordinance, any building permit which would be in violation of the zoning ordinance as it was prior to the purported adoption of the rejected ordinance. The defendants Ernest F. Carlson, Inc. and Mary E. Gallagher are each to be enjoined permanently from seeking any such building permit in reliance upon the rejected ordinance.

*So ordered.*