## No. 20981.

JOHN D. ANDERSON, ET AL. v. SAMUEL JUDD, AS DIRECTOR OF BUILDING INSPECTION DEPARTMENT, CITY AND COUNTY OF DENVER, ETC., ET AL.

(404 P.2d 553)

Decided July 26, 1965.

C. Hamilton Evans, for plaintiffs in error.

Max P. Zall, Earl T. Thrasher, Robert M. Kelly, for defendants in error.

*En Banc.*

Mr. Justice Schauer delivered the opinion of the Court.

Pursuant to the request of the Department of Zoning Administration of the City and County of Denver, Colorado, the City Attorney of Denver, on May 16, 1963, forwarded to the City Council a bill for an ordinance changing the zoning classification from R-2 to R-4 of an area described as follows:

"Block Eight (8) Honeymoon Manor Subdivision and the East 500.3 ft. of the SE¼ of the NE¼ of the NE¼ of Section 29; Township 3 South Range 67 West of the 6th P. M."

This bill was designated as Councilman's Bill No. 223, and was referred to during Council proceedings as C. B. 223. It was introduced in the City Council by three of its members on May 20, 1963, and thereafter designated as Ordinance No. 297, Series of 1963. The ordinance was read in full and was thereafter referred to the Zoning Committee of the Council which recommended

that it be ordered published. It was so ordered on July 15, 1963, and published in the Daily Journal, a public daily newspaper, on July 20, 1963.

On August 2, 1963, protests were filed by 121 property owners residing in the area affected. The Department of Zoning Administration checked the protests and reported that in view of the location of the residences of protestants in relation to the affected property, it would be necessary for the Council to cast seven affirmative votes for passage.

At the meeting on July 15, 1963, the president of the Council announced that a public hearing would be held on the bill on Monday evening, August 5, 1963. On the latter date a hearing was held and interested parties appeared both in favor of and against favorable action. On motion, the bill was defeated by a vote of six to three. A motion was then made for reconsideration, but it was declared out of order by the presiding officer. A motion that the ruling of the presiding officer be sustained was passed by the same vote. The record of this action, received as an exhibit, shows the notation, "Killed Aug. 5, 1963."

On August 19, 1963, a regular meeting of the Council was held, eight members being present. No notice, public or otherwise, was given of this meeting or of any proposed action on the subject ordinance. A motion to reconsider the vote on the bill "which was killed on August 5, 1963," carried by a vote of seven to one. A motion that the bill be placed upon its final passage and passed was carried by the same vote.

On August 22, 1963, Mayor Thomas Currigan of Denver addressed a letter to the Council in which he vetoed the bill. At a regular meeting of the Council on September 3, 1963, a motion that a public hearing be held on the Mayor's veto message was ruled out of order and the vote on the veto message postponed until September 9, on which date eight persons appeared in support of the veto and three in opposition. A motion that the bill

be passed notwithstanding the veto carried by a vote of seven to two.

The present action was instituted on September 10, 1963, by two of the original protestants. In their COMPLAINT AND MOTION FOR TEMPORARY RE-STRAINING ORDER, they alleged, in part, that because of their ownership of property within one hundred feet of the subject matter of the ordinance they were entitled to be considered as aggrieved parties and legal protestors, under the provisions of Section 618.2-8 of the Revised Municipal Code of the City and County of Denver. They set out the proceedings of the City Council with relation to Council Bill No. 223 as above outlined, and alleged that the actions of the City Council were in whole or in part contrary to the Charter and ordinances of the City and County of Denver, to the Constitution of the State of Colorado and to the Constitution of the United States of America in that, among other things, such actions deprived plaintiffs of their property without due process of law.

The protestants alleged that passage of Council Bill No. 223 threatened immediate and irreparable damages and injury because they owned property immediately adjacent to the property affected by the ordinance. It was anticipated that construction of buildings would immediately commence upon the subject property which would interfere with the peaceful enjoyment of protestants' own property, as guaranteed by the City Charter and ordinances and the State and Federal Constitutions. Further, that after construction should begin on the property affected by the ordinance plaintiffs would be without a remedy.

The protestants alleged that because of the immediacy of the circumstances an ex parte hearing on their motion for a temporary restraining order was mandatory to protect their rights; that they were ready, willing and able to give security, as provided by Rule 65, R.C.P. Colo., and that they had exhausted their administrative

remedies and there was no other plain, adequate and speedy remedy at law other than the injunctive relief prayed for. They prayed for a temporary restraining order enjoining defendants, separately, from taking further action in their respective capacities; for a later hearing, after notice, of their motion for preliminary injunction, and for an order declaring the C. B. No. 223 to be invalid and void.

Plaintiffs' complaint and motion were presented to the court on September 10, 1963, and the motion was heard ex parte without notice to defendants. After appropriate findings of fact and conclusions of law, the court granted the temporary restraining order prayed for, and set September 18, 1963, as the day for further hearing on plaintiffs' motion for preliminary injunction, conditioned upon plaintiffs' filing bond in the amount of $50, which bond was filed.

On September 12, 1963, defendants filed a motion to dismiss the action upon the ground that the complaint failed to state a claim upon which relief could be granted. Subsequently, by consent of all parties to the proceeding, the action was dismissed as to the Attorney General and the temporary restraining order as to him was dissolved. Thereafter, the motion of defendants to dismiss was heard and granted. Judgment was ordered entered in favor of defendants, dismissing the complaint. A motion for rehearing was dispensed with. It is to this latter judgment of dismissal that the instant writ of error is directed.

The sole issue to be determined here relates to the authority of the City Council to reconsider and reverse on August 19, 1963, its action of August 5, 1963, without giving additional notice and without conducting a second public hearing.

The arguments presented by plaintiffs in error, which are pertinent to this opinion and upon which they rely for reversal of the judgment of the trial court, are summarized as follows:

"A. The actions of City Council violated the rights of plaintiffs and interested citizens to rely on the finality of its actions in a zoning matter, the actions of City Council being those of a quasi judicial body. It is submitted that the actions of City Council under the facts and circumstances of this zone change request are matters of first impression in the state of Colorado.

"B. The actions of City Council were contrary to the intent of the applicable provisions of the City ordinance and Charter relating to rezoning.

"C. The actions of City Council were contrary to the applicable case law relating to the rights of citizens in zoning matters."

For a proper understanding of the issues, we will set forth the applicable provisions of the Charter governing zoning problems in Denver, a home-rule city, and the ordinances in effect relative to such problems.

CHARTER PROVISIONS

The Charter of the City and County of Denver provides as follows:

"B1.16 *Method of procedure.* The council shall provide for the manner in which such regulations and restrictions and the boundaries of such districts shall be determined, established and enforced, and from time to time amended, supplemented or changed. However, no such regulation, restriction or boundary shall become effective *until after a public hearing in relation thereto, at which parties in interest and citizens shall have an opportunity to be heard.* At least fifteen days' notice of the time and place of such hearing shall be published in an official paper, or a paper of general circulation in the city and county of Denver.

"B1.17 *Changes.* Such regulations, restrictions and boundaries may from time to time be amended, supplemented, changed, modified or repealed. In case, however, of a protest against such change, signed by the owners of twenty per cent or more, either of the area of the lots included in such proposed change or of those

immediately adjacent in the rear thereof, extending one hundred feet therefrom, or of those directly opposite thereto, extending one hundred feet from the street frontage of such opposite lots, such amendment shall not become effective *except by the favorable vote of three-fourths of all the members of the council* of the city and county of Denver. *The provisions of the previous section relative to public hearings and official notice shall apply equally to all changes or amendments."* (Emphasis supplied.)

## CITY ORDINANCES

The Zoning Ordinance of the City and County of Denver, at 618 — AMENDMENT PROCEDURE, provides:

"1. *Declaration of Public Policy.* For the purpose of establishing and maintaining sound, stable and desirable development within the territorial limits of the municipality, this ordinance, and as here used the term ordinance shall be deemed to include the official map, shall not be amended except to correct a manifest error in the ordinance or, because of changed or changing conditions in a particular area or in the municipality generally, to re-zone an area or extend the boundary of an existing district, or to change the regulations and restrictions thereof, only as reasonably necessary to the promotion of the public health, safety or general welfare. Subject to the limitations of the foregoing Declaration of Public Policy, an amendment to this ordinance may be initiated by Council on its own motion or, in the manner and pursuant to the procedure hereinafter set forth, may be initiated by any person, firm or corporation filing an application therefor with the Department of Zoning Administration.

\* \* \*

"2-8. *Effect of Protest to Amendment.* In case of a protest to a proposed amendment to this ordinance, signed by the owners of twenty per cent or more, either of the area of the lots included in such proposed change

or of those immediately adjacent in the rear thereof, extending one hundred feet therefrom, or of those directly opposite thereto, extending one hundred feet from the street frontage of such opposite lots, such amendment shall not become effective except by the favorable vote of three-fourths of all members of Council.

\* \* \*

"3-4. *Limitation on Filing.* No application for the change of a zoning classification shall be made by a property owner or his agent concerning any land area which land area or any portion thereof shall have been the subject of a public hearing conducted by Council within the immediately preceding twelve months period and which public hearing resulted in a rejection of the proposed zoning; provided, however, that this limitation shall not apply to those land areas or portions thereof for which a different zone district classification is proposed than that which was rejected by Council. (Sec. 1 (a), Ord. 176, Series 1961)"

The two Charter provisions, *supra,* when considered together, compel a public hearing to be held on every zoning application upon which a legal protest is filed. The subject ordinance was defeated and rejected under the provisions of the Charter and appropriate ordinances of the City and County of Denver, and the Council then attempted to reconsider its action at a later date without complying with the provisions for public notice and hearing.

The law is clear that a municipal legislative body may reconsider its actions and rescind an ordinance that has been previously enacted, or enact an ordinance that has previously been defeated, at any time before the rights of third parties have become vested, where there is no statutory, charter or other prohibition, as in this case. In the defendants' brief several texts on municipal corporations are cited to this effect, but reference thereto does not give us an answer to the present question, whether the City Council had the power to reconsider

and reverse its previous action without giving additional notice and without conducting a second public hearing. We must, therefore, have recourse to applicable case law. We have found no Colorado case directly in point, but plaintiffs in error cite several cases from other jurisdictions.

The case of *Kitty v. City of Springfield,* 343 Mass. 321, 178 N.E.2d 580 (1961), seems squarely in point. Suit was brought by property owners for a judgment declaring that a zoning ordinance, reconsidered and adopted after defeat, was null and void. On May 11, 1959, the ordinance failed of passage. A motion for immediate reconsideration was lost. No notice was given on that date of any intention to seek reconsideration at a later date. The Massachusetts court held:

"* * * when the May 11 meeting dissolved, the proposed ordinance was no longer pending before the common council because it had been defeated. Under usual parliamentary procedure, it would have been too late to move for reconsideration after the May 11 meeting had adjourned.

* * *

"* * * We need not consider whether valid rules could embody a custom thus permitting recurrent presentations of a zoning change after unfavorable action. Such a rule obviously would encourage the exertion of continuing pressure upon objecting members of the council to change their votes in a matter as to which the Legislature has shown its intention that there shall be careful deliberation. * * *.

"* * * *In respect of zoning changes, it is obviously desirable that members of the public shall be able to ascertain the legislative status of a proposed change at all times, and to rely on unfavorable action, final in accordance with applicable rules, as a complete defeat of the proposal.*" (Emphasis supplied.)

A similar situation was considered by the Supreme Court of New York in the case of *Rabasco v. Town of*

*Greenburgh*, 285 App. Div. 895, 137 N.Y.S.2d 802 (1955), and the court held this type of procedure invalid, stating:

"Further, the attempted reconsideration on July 30th, of the resolution of approval of the plan which included the rezoning, that was defeated at the meeting of July 15th, was illegal. The meeting of July 15th, called after notice of public hearing, was closed after a defeat of the resolution and was not adjourned to a further date or to the call of the chair. Therefore the town board had spent its authority in that connection and under the notice of public hearing, and in no event could reconsider or take any further action without a new notice of public hearing being had.

"It is significant that sixty-four additional property owners filed protests subsequent to the meeting of July 15th and undoubtedly innumerable other people, whose vested rights might have been, or would have been, affected, had no opportunity to be heard at the special meeting held July 30, 1954."

The *Rabasco* case, *supra*, was cited in another New York case, *Bohan v. Town of Southhampton*, Sup., 227 N.Y.S.2d 712 (1962), in which the court said:

"Zoning is a legislative power residing in the State which may be delegated to the Town Board. * * * When that delegated power is exercised the effect is derogatory to common law rights of property owners in that the ordinance restricts the use of their property. For that reason and because the power is merely a delegated, not inherent, one the procedure prescribed by the legislature in the enabling act is strictly construed and must be strictly followed. * * *. Following those principles ordinances have been stricken for total failure of notice * * *; for failure of new notice after public hearing was closed and the ordinance adopted at a subsequent meeting (Rabasco v. Town of Greenburgh, 285 App. Div. 895, 137 N.Y.S.2d 802, aff'd. 309 N.Y. 735, 128 N.E.2d 425); * * *. While none of the foregoing cases is deci-

sive of the question posed [determining the effect of notice on certain parties], they do provide guidance."

▪ Sufficient or proper notice required by charter or ordinance cannot be regarded as unsubstantial or innocuous. Right of notice to, and opportunity for, hearing by affected property owners is entirely too fundamental to require discussion. The intent of the charter and ordinance is crystal clear and a lack of compliance therewith dictates reversal of this case.

For the above reasons the judgment of the trial court dismissing the complaint is reversed and the cause remanded for further proceedings and orders in accordance with the views herein expressed.