FRANK J. KUBIK & others *vs.* CITY OF CHICOPEE & others.

Hampden. December 5, 1967. — January 8, 1968.

Present: WILKINS, C.J., WHITTEMORE, KIRK, SPIEGEL, & REARDON, JJ.

*Zoning*, Amendment. *Municipal Corporations*, City council or board of aldermen, "All the members" of a board, Veto by mayor.

After the mayor of a city had vetoed an amendment of its zoning ordinance adopted by the board of aldermen and the board had reconsidered the matter as directed by the city charter, a vote of the board again adopting the amendment was subject to the requirements of G. L. c. 40A, § 7. [516]

For the purposes of G. L. c. 40A, § 7, "all the members" of a city council means the full membership thereof, including a member temporarily disqualified from voting. [516–517]

Where it appeared in a suit in equity that a city charter provided for a board of aldermen of thirteen members as the single legislative branch, that a valid protest under G. L. c. 40A, § 7, against a proposed amendment of the city's zoning ordinance had been filed with the city clerk, and that the board voted to adopt the amendment by a vote of nine to three, with the president of the board not voting since he was then acting mayor and forbidden from voting by the city charter, it was held that the vote was ineffective as not complying with the requirement of § 7 for adoption by "three-fourths . . . of all the members" of the board. [518]

BILL IN EQUITY filed in the Superior Court on December 23, 1963.

The suit was heard by *Tomasello*, J., on a master's report.

*William K. Danaher, Jr.*, for Edward G. Blyda & another.

*Socrates Geanacopoulos* for the plaintiffs.

*Robert L. Nowak*, City Solicitor, for the City of Chicopee & another, joined in a brief.

WHITTEMORE, J. This is a bill in equity for a declaratory decree under G. L. c. 231A (*Woods* v. *Newton*, 349 Mass. 373, 380) as to the validity of the rezoning of a parcel of land in Chicopee owned by the defendants Edward G. Blyda and Edna V. Blyda. The city and its building inspector are also defendants. A master's report was confirmed. The

final decree in the Superior Court declared that the amending ordinance voted by the board of aldermen on November 12, 1963, and on November 19, 1963, is null and void.

General Laws c. 40A, § 7 (inserted by St. 1954, c. 368, § 2), provides in material part: "No change of any zoning ordinance or by-law shall be adopted except by a two-thirds vote of all the members of the city council where there is . . . a single branch . . . or by a two thirds vote of a town meeting; provided, that in case there is filed with the city clerk . . . [a written protest conforming to stated requirements] no such change . . . shall be adopted except by a unanimous vote of all the members of the city council . . . , if it consists of less than nine members or, if it consists of nine or more members, by a three-fourths vote of all the members thereof where there is . . . a single branch . . . ."

The city charter provides for a board of aldermen as the single legislative branch with thirteen members. Section 25 of the charter provides that any ordinance "shall require for its passage the affirmative votes of a majority of all the members of the board of Aldermen." Section 27 provides in material part that every ordinance "shall be presented to the mayor. If he . . . [does not approve it] he shall return the same with his objections to the board . . . , which shall . . . proceed to reconsider said ordinance . . . and if after such reconsideration two thirds of the board . . . vote to pass the same, it shall be in force. . . ."

A protest had been filed in such form and at such time as to make G. L. c. 40A, § 7, applicable. The mayor on November 15, 1963, vetoed the ordinance that had been adopted on November 12, 1963, by a vote of ten to three. The board of aldermen on November 19, 1963, voted by a vote of nine to three (less than three quarters in the affirmative of a membership of thirteen) to adopt the ordinance notwithstanding the veto. Alderman Roy, the president of the board, was then acting mayor and could not vote. Section 30 of the charter forbade him while so acting from presiding over the board of aldermen or having a vote therein.

The intention of c. 40A, § 7, to require a greater affirmative vote for the adoption of an ordinance in the event of a valid protest is express. The zoning statute is of general application throughout the State and its requirements for the adoption of zoning ordinances cannot be varied by the provisions of particular charters. *Bennett* v. *Board of Appeal of Cambridge*, 268 Mass. 419, 422. The defendants do not contend that the statute was not operative to require a three fourths vote for the first adoption of the ordinance.

We see nothing in their argument that enactment after veto is not in the nature of an adoption of the ordinance to which c. 40A, § 7, applies. The purpose of G. L. c. 40A, § 7, would be defeated if after the number of those who are concerned and recorded as opposed had been augmented by the mayor, and his reasons in opposition had been laid before the board, a lesser number of council votes could cause a final adoption.

The original adoption had been rendered nugatory by the veto. *Storer* v. *Downey*, 215 Mass. 273, 275. The direction of the charter to reconsider does not imply continuing validity in the original vote to adopt. "Reconsideration" puts the original bill again before the legislative body for more careful deliberation of the question of its adoption. *Opinion of the Justices*, 291 Mass. 578, 584. The question on reconsideration after a veto is a new one, that is "whether the measure shall be passed notwithstanding the objections of the mayor." *Nevins* v. *City Council of Springfield*, 227 Mass. 538, 545. See *Mayor of Lowell* v. *Dadman*, 191 Mass. 370. The new vote to pass was a vote to adopt and was the only effective such vote.

For purposes of c. 40A, § 7, the board of aldermen on November 19, 1963, was a board of thirteen members notwithstanding the temporary disqualification of the president as acting mayor. There can be no doubt that "all the members of the city council" means the full membership. *Kitty* v. *Springfield*, 343 Mass. 321, 322–324. See *Merrill* v. *Lowell*, 236 Mass. 463, 467–468. The defendants contend, however, that the phrase excludes members temporarily

subject to a general voting disqualification, citing *Cline* v. *Seattle*, 13 Wash. 444, 446–447. We disagree. The purpose of the statute indicates otherwise. This is an important substantive safeguard. The required number of votes should not be subject to change by action that does not reduce the membership. The president, although unable to vote while acting as mayor, remained a member of the council. A contrary construction could operate arbitrarily.[1]

In *Steiner* v. *Zoning Commn. of Fairfield*, 149 Conn. 74, a valid protest had caused to be operative the statutory requirement of the affirmative vote of "two-thirds of all the members of the zoning commission." The court held that notwithstanding the resignation of one of the seven members of the board, the statute required the vote of two thirds of the number of members authorized by the charter. The court found an "intent to give the additional protection . . . of a definite and constant number."

The *Steiner* case is well reasoned; this case is stronger on its facts. For expedition in the city's business the temporary inability of the president to vote is not greatly more significant than voluntary absence of a councillor. The case in this aspect resembles *Streep* v. *Sample*, Fla. 84 So. 2d 586, 588 ("three fourths of the governing body") and *Hopkins* v. *MacCulloch*, 35 Cal. App. 2d 442, 452–453 ("full affirmative vote of all members"). In each of these zoning cases it was held that an absent member must be counted in determining whether the voting requirement had been met.

*Kidder* v. *Mayor of Cambridge*, 304 Mass. 491, 496–499, relied on by the defendants, is inapplicable because of statutory differences. The case holds that the "whole membership" (St. 1939, c. 43) of a political committee whose originally elected members could by statute vary

---

[1] If the total membership of a city council were nine, and temporary disqualification of a member were to be construed to change the total membership to eight, the statutory requirement of unanimous action by a council of less than nine members would be operative. But only seven affirmative votes would be required (three quarters of nine) if all the nine members were available to vote.

between not less than three nor more than thirty five in each ward (G. L. c. 52, § 9) was composed of the members in office at the time of the action by the committee, notwithstanding the death and resignation of certain members originally chosen.[2]

: There is in the case at bar no implication that the temporary disqualification would in reasonable and proper course be so long continued that action at a meeting with the president in attendance and voting could not be had within a necessary or appropriate time after the veto. We intend no suggestion as to the construction of the statute as applied to such circumstances.

We are not concerned that, as the defendants suggest, "an enterprising Mayor could become a one-man Council if the President . . . was one who had voted with the majority." We think means would be available to overcome the effect of a maneuver of a mayor who, "not pleased with the ordinance, . . . [would] absent himself from town and thereby cancel the vote of the President." We are concerned, however, that the firm assurances of § 7 not be made uncertain by the circumstance that from time to time the mayor might be out of town for a short period when a vote was required, either on original enactment, or after a veto.

Final decree affirmed.

*So ordered.*

---

[2] The need to fill a vacancy in the council itself presents a special case. See *Ross* v. *Miller,* 115 N. J. L. 61, 64–66 (the vote of a majority of the whole statutory membership was required). Contra, *State* v. *Hoppe,* 194 Minn. 186, 196.