2011 UT 63

**L.C. CANYON PARTNERS, L.L.C., Plaintiff and Appellant,**

v.

**SALT LAKE COUNTY, Defendant and Appellee.**

**No. 20090569.**

Supreme Court of Utah.

Oct. 18, 2011.

---

James S. Lowrie, Anthony L. Rampton, Salt Lake City, for plaintiff.

Lohra L. Miller, Donald H. Hansen, Melanie F. Mitchell, Thomas L. Christensen, Salt Lake City, for defendant.

Justice LEE, opinion of the Court:

¶ 1 This is an appeal from a decision by the district court upholding Salt Lake County's zoning of property owned by L.C. Canyon Partners and affirming the County Council's authority to rescind an ordinance that would have rezoned that property. We agree with the district court and affirm its entry of summary judgment against L.C. Canyon. The County had a rational basis for its zoning decision and the Council had the authority to rescind its rezoning ordinance before it became effective. In light of the Council's rescission authority, moreover, L.C. Canyon had only a unilateral hope that the rezoning ordinance ultimately would take effect, and it accordingly has no viable takings claim. The County is thus entitled to judgment as a matter of law, and we affirm the district court on all counts.

I

¶ 2 On May 4, 2004, L.C. Canyon entered into an agreement to purchase several parcels of land, among them a 15.359-acre parcel located near the mouth of Little Cottonwood Canyon in Salt Lake County, Utah. The agreement was amended several times, and as a result the purchase of this parcel was not consummated until May 2006. The deed on the property was recorded on May 16, 2006.

¶ 3 L.C. Canyon intended to build a single-family residence on the property. At the time of the purchase, however, the property was zoned FR–20, which requires a minimum of twenty acres per residence. L.C. Canyon accordingly sought to rezone the property,

beginning before its purchase became final. On June 17, 2005, L.C. Canyon filed an application with the County to rezone 3.543 acres of the property from FR–20 to FR–2.5, a change that would have allowed the construction of a residence on the property. The County Planning Commission subsequently considered the proposed rezoning, ultimately recommending its approval to the Salt Lake County Council.

¶ 4 On October 18, 2005, the Council voted to approve L.C. Canyon's rezoning application. By a vote of five to two, the Council "approved, passed, and adopted" an ordinance amending the zoning map to grant L.C. Canyon's requested rezoning of the 3.543-acre portion of the property to FR–2.5. The ordinance included instructions to comply with the steps that a county legislative body must take before an ordinance may take effect. *See* UTAH CODE ANN. § 17–53–208(2)–(3) (2009).[1] Specifically, the ordinance noted that it would "take effect 15 days after its passage and upon at least one publication in a newspaper published in and having general circulation in Salt Lake County." In addition, the ordinance was signed by the Council chair and attested to by the county clerk.

¶ 5 One week later, at the Council's October 25 hearing, one of the council members who had voted in favor of the rezoning ordinance sought its reconsideration. At that time, Council member Horiuchi suggested that some of the Council members had been "confused about the location of the site" and that they had recently discovered that it was closer to Little Cottonwood Canyon than they had initially believed. The Council agreed to reconsider the matter at its next meeting on November 1, the day before the ordinance was to take effect. At that meeting, Council member Wilson moved to rescind the October 18 rezoning ordinance. The motion was seconded by Council member Hatch and approved on the votes of five of the seven members participating in the matter. L.C. Canyon subsequently sought and was denied a variance from the County Board of Adjustment.

---

1. Because there have been no substantive changes to the relevant statutes that would affect this opinion, we cite to the current versions, unless otherwise indicated.

¶ 6 L.C. Canyon then filed the complaint in this action, asserting due process and takings claims and alleging that the FR–20 zone lacked a rational basis as applied to L.C. Canyon's property, that the Council had no authority to rescind the October 18 rezoning ordinance, and that the rescission of that ordinance effected a taking of L.C. Canyon's property. After discovery on these claims, the parties filed cross-motions for summary judgment.

¶ 7 The district court granted the County's motion for summary judgment and denied L.C. Canyon's motion for partial summary judgment. First, in rejecting the due process challenge to the rationality of the County's zoning standard, the court concluded that the FR–20 zone was "rationally related" to the "legitimate public objectives of protecting the foothills and canyon areas of the county and their natural and scenic resources" and deemed the application of the FR–20 zoning rule "neither arbitrary nor capricious ... because it is reasonably debatable that they will protect the general welfare of the public." Second, the court upheld the Council's authority to rescind its October 18 rezoning ordinance, noting that the ordinance was rescinded within the 15–day statutory period before the ordinance could become effective, *Id.* § 17–53–207(3)(a). Finally, the court rejected L.C. Canyon's takings claim on the ground that it "never acquired a vested development right or other legally protected or protectable interest under the 'takings' clauses of the federal and Utah constitutions."

¶ 8 L.C. Canyon filed this timely appeal from the district court's summary judgment decision, which we consider under a *de novo* standard of review, granting no deference to the district court's analysis. *Bahr v. Imus,* 2011 UT 19, ¶¶ 12–18, 250 P.3d 56.

## II

¶ 9 L.C. Canyon challenges all three of the principal grounds for the district court's summary judgment in the County's favor. We find L.C. Canyon's arguments unpersuasive and accordingly affirm.

## A

¶ 10 L.C. Canyon first contends that the district court erred in upholding the rationality of the FR–20 zone against a due process claim. Specifically, L.C. Canyon asserts that the court improperly limited its due process analysis to the general question whether the County had a "reasonably debatable" basis for adopting the FR–20 zone in the abstract, without considering the more specific question of the rationality of the application of that zone to L.C. Canyon's property in particular. On that latter question, L.C. Canyon insists that there is no reasonable, non-arbitrary basis for subjecting its property to the FR–20 zone. Although the 15–acre parcel in question is smaller than the 20 acres ordinarily required for construction in an FR–20 zone, L.C. Canyon asserts that this parcel is surrounded by property that is otherwise unavailable for development. In light of that fact, L.C. Canyon insists that the FR–20 zone as applied here does not rationally advance the public purposes ordinarily underlying such a zone.

¶ 11 We affirm the district court and uphold the rationality of the County's application of the FR–20 zone to L.C. Canyon's 15–acre parcel. *See Grace United Methodist Church v. City of Cheyenne,* 451 F.3d 643, 658–59 (10th Cir.2006) (zoning decisions may be struck down on due process grounds only if they are "clearly arbitrary and unreasonable, having no substantial relation to the public health, safety, morals, or general welfare" (internal quotation marks omitted)). Local governments historically and understandably have adopted general zoning rules that apply to broadly defined categories of property. The FR–20 zone is just such a general rule. As the district court explained, this zoning rule is rationally related to advancing the "legitimate government objectives of protecting the foothills and canyon areas of the county and their natural and scenic resources." In defining the FR–20 zoning rule, the County concluded that this objective generally would be advanced by prohibiting residential construction on parcels smaller than 20 acres. That was a rational judgment, and it is one that easily

survives a constitutional due process challenge.

¶ 12 Like any general rule, the zoning rule at issue here could be said to be imperfectly drawn. The FR–20 zoning rule may be seen as overinclusive (as L.C. Canyon suggests) in that there may be parcels smaller than 20 acres on which construction would not impact the natural, open scenery any more than would construction on a 20–acre lot. But that does not render the application of the general rule unconstitutionally arbitrary. Zoning regulations are neither designed nor required to advance their public purposes with perfect precision. When the local zoning authority applies general zoning rules to broad categories of property, it is opting for a more efficient, less discretionary regime. That is the rational basis for the County's decision to subject L.C. Canyon to the FR–20 zone and to refuse to engage in a more particularized, parcel-by-parcel review of the appropriate zoning standard to apply to L.C. Canyon's property. A particularized zoning standard for each individual parcel of property might arguably be more fairly tailored to the specifics of each parcel, but it would also be less efficient and more subject to individual discretion. The zoning authority acts well within the limits of its constitutional discretion when it opts for general zoning rules and eschews discretionary zoning standards.[2]

¶ 13 Salt Lake County, moreover, has adopted elements of both general rules and discretionary standards in its zoning regime. Like many local governments, the County has adopted procedures that allow aggrieved property owners to seek a variance from the application of general zoning rules from the Board of Adjustment. SALT LAKE COUNTY, UTAH, CODE OF ORDINANCES § 19.92.040 (2011). Thus, L.C. Canyon was entitled to file—and ultimately did file—for a variance with respect to the application of the FR–20 zoning rule to its 15–acre parcel. In seeking that variance, L.C. Canyon advanced the same points it articulates here regarding the unfairness of applying the FR–20 zone to a 15–acre parcel surrounded by many acres of undevelopable property. That request was ultimately denied by the Board of Adjustment, however, and L.C. Canyon has not appealed from that decision.

¶ 14 Thus, L.C. Canyon is in no position on this appeal to challenge the County's failure to consider its particularized challenge to the application of the FR–20 zone to its property. L.C. Canyon's appeal is properly directed to the County's adoption of the FR–20 zone and its rescission of an ordinance that would have repealed it. Any particular quarrel with the County's failure to allow an exception to the FR–20 zone was the subject of the request for a variance from the Board of Adjustment, and the Board's denial of that request is not before us on this appeal.

B

¶ 15 L.C. Canyon also challenges the County's authority to rescind the rezoning ordinance adopted at the Council's October 18 meeting. In L.C. Canyon's view, an ordinance can be repealed or amended only upon enactment of another ordinance of "equal dignity." Because the Council did not enact such a new ordinance but instead purported to rescind the rezoning ordinance enacted on October 18, L.C. Canyon insists that the

---

**2.** *See McGowan v. Maryland,* 366 U.S. 420, 425–26, 81 S.Ct. 1101, 6 L.Ed.2d 393 (1961) ("[T]he Fourteenth Amendment permits the States a wide scope of discretion in enacting laws which affect some groups of citizens differently than others. The constitutional safeguard is offended only if the classification rests on grounds wholly irrelevant to the achievement of the State's objective. State legislatures are presumed to have acted within their constitutional power despite the fact that, in practice, their laws result in some inequality. A statutory discrimination will not be set aside if any state of facts reasonably may be conceived to justify it."); *City of Toledo v. Tellings,* 114 Ohio St.3d 278, 2007–Ohio–3724, 871 N.E.2d 1152, at ¶ 33 (2007) ("Laws limiting rights, other than fundamental rights, are constitutional with respect to substantive due process and equal protection if the laws are rationally related to a legitimate goal of government."); *Ky. Ass'n of Chiropractors, Inc. v. Jefferson Cnty. Med. Soc'y,* 549 S.W.2d 817, 822 (Ky.1977) ("The Fourteenth Amendment permits states wide discretion in enacting laws which affect some group of citizens differently from others, the due process or equal protection safeguards contained therein being offended only if the resultant classifications or deprivations of liberty rest on grounds wholly irrelevant to a reasonable state objective.").

rezoning ordinance remains in effect and that the FR–20 zone is accordingly inapplicable.

¶ 16 L.C. Canyon acknowledges a limited authority of the County to reconsider its past decisions. Citing County Code of Ordinances section 2.04.180(A), L.C. Canyon asserts that the County's reconsideration power is governed by Robert's Rules of Order, which are incorporated in the code as to "[p]rocedural rules not specifically provided herein or by state law." Because Robert's Rule 36 prescribes a one-day window for motions for reconsideration, however, L.C. Canyon insists that the Council's reconsideration of the October 18 rezoning ordinance was untimely.

■ ¶ 17 We agree with the premise that Robert's Rules prescribe the pertinent procedural mechanism in this case. Robert's Rules are incorporated in the County Code as a gap-filler, establishing the governing procedures for matters "not specifically provided herein or by state law." SALT LAKE COUNTY, UTAH, CODE OF ORDINANCES § 2.04.180(A). And nothing in the County Code or in state law addresses *sua sponte* reconsideration by a County Council, so Robert's Rules apply.

■ ¶ 18 That leaves the question of which provision of Robert's Rules applies to this case. L.C. Canyon directs us to rule 36, which prescribes a limited one-day window for reconsideration motions. The County relies on the rescission provision in rule 37, which sets forth more flexible limits on the power of rescission. We uphold the County's November 1 decision under rule 37, reject L.C. Canyon's reliance on rule 36, and affirm the Council's authority to rescind the October 18 rezoning ordinance.

¶ 19 Rule 37 authorizes a deliberative body to "rescind[ ]" any "vote taken by an assembly, except those mentioned further on" under two circumstances: (a) "by a majority vote" where "notice of the motion [to rescind]

has been given at the previous meeting or in the call for this meeting"; or (b) "by a two-thirds vote, or by a vote of a majority of the entire membership" where no such notice is given. ROBERT'S PARLIAMENTARY LAW 85 (Bicentennial ed.1975). Only certain matters are excepted from the scope of the rescission rule:

> The motion to rescind can be applied to votes on all main motions … with the following *exceptions:* votes cannot be rescinded after something has been done as a result of that vote that the assembly cannot undo; or where it is in the nature of a contract and the other party is informed of the fact; or, where a resignation has been acted upon, or one has been elected to, or expelled from, membership or office, and was present or has been officially notified. In the case of expulsion, the only way to reverse the action afterwards is to restore the person to membership or office, which requires the same preliminary steps and vote as is required for an election.

*Id.*

¶ 20 We uphold the Council's November 1 rescission decision on the ground that it satisfies all of the standards set forth in Robert's rule 37. Notice of the motion was given "at the previous meeting" (on October 25). A majority vote was thus all that was necessary for the motion to rescind to carry. Ultimately, moreover, the November 1 motion carried by a more-than-two-thirds vote: five of the seven participating council members voted to rescind the ordinance.

¶ 21 It is also clear that the matter rescinded was not subject to any exception under rule 37. On November 1, the rezoning ordinance had not yet gone into effect. Under state law, in fact, the ordinance could not "take effect within less than 15 days after its passage." UTAH CODE ANN. § 17–53–208(3)(a).[3] In light of this waiting period,

3. L.C. Canyon would have us dismiss the 15-day statutory waiting period as a pure notice provision having no bearing on an ordinance's effective date or on the County's power of rescission. We see nothing in the text or background of the statute to sustain L.C. Canyon's view, however. On its face, the statute speaks expressly to its

effective date—precluding any county ordinance from *tak[ing] effect* within less than 15 days after its passage." UTAH CODE ANN. § 17–53–208(3)(a) (emphasis added). And as courts elsewhere have indicated, this kind of limitation has long been understood to be aimed not just at giving notice, but at "avoid[ing] hasty or ill-

absolutely nothing could have been "done as a result of [the October 18 rezoning decision] that the assembly [could not] undo." [4] In fact, L.C. Canyon has conceded that it incurred no expense or liability in reliance on the Council's October 18 decision. Thus, when the motion to rescind was made on October 25 and adopted on November 1, there was absolutely nothing that L.C. Canyon had done that could not be undone.

¶ 22 The only impact of the November 1 rescission vote was to dash L.C. Canyon's unilateral hope that the October 18 zoning change would soon become final. Without something more than that, the rescission motion was in order under Robert's Rule 37 and the Council effectively restored the property to its original zoning status. [5] This conclusion is consistent with an extensive body of case law that recognizes that a "legislative body" of a municipal corporation "possesses the unquestioned power to rescind prior acts, and votes at any subsequent time until the act or vote is complete, provided vested rights are not violated, and that such rescission is in conformity to the law applicable and the rules and regulations adopted for the government of the body." [6]

considered action" by ensuring a "reflective process that affords an opportunity for expression of opinion" during a period in which the right of rescission is retained. *See* Eugene McQuillin, The Law of Municipal Corporations § 16:75 (3d ed.2005) (citing cases). Thus, the 15–day statutory waiting period is consistent with a right of rescission and cannot reasonably be read as a mere notice provision.

4. *See Gormley v. Day*, 114 Ill. 185, 28 N.E. 693, 694 (1885) ("For the purposes of the argument it may be conceded, if the ordinance had gone into effect before its repeal, he would have acquired special rights under it, but, as it did not, his rights remained precisely the same as if the vote of the council adopting it had never occurred. Before the so-called 'ordinance' could have any legal effect as such, two things, in addition to the affirmative vote adopting it, were necessary: *First*, printed or written copies of the ordinance had to be posted within 30 days after its passage in 3 of the most public places in the village; and *second*, the lapse of 10 days after such posting. From its passage until the full period of 10 days after posting had expired, it existed, so to speak, as an ordinance in embryo merely. Until the final condition essential to give it effect as a law was performed, no rights, inchoate or otherwise, could arise under it, either to the relator or to any other person. The right of the village council to rescind or repeal the resolution adopting the ordinance, at any time before it took effect, is too clear to admit of discussion or doubt. The council have exercised this right, and we have no disposition to interpose, even if we had the power to do so, which we clearly have not." (citation omitted)); *State ex rel. Att'y Gen. v. Excelsior Coke & Gas Co.*, 69 Kan. 45, 76 P. 447, 447 (1904) ("The fallacy of this argument lies in the assumption that an ordinance has some force and effect before the time set for it to go into operation. The answer is that until that time arrives it has no effect for any purpose. It imposes no obligation on the city and cannot be made the basis of a present contract. At any time before it takes effect the city may repeal it, notwithstanding that its terms may have been accepted and expenditures may have been made

in reliance upon it."); *see also Union Pub. Serv. Co. v. Vill. Of Minneota*, 212 Minn. 92, 2 N.W.2d 555, 559 (1942) ("[I]t is ... well settled law that before an ordinance takes effect it may be revoked or repealed by the Village Council either by motion, resolution or ordinance.").

5. Rule 37 rescission does not give perpetual rescission power to a deliberative body that operates under it. The above-quoted exception in the rule is significant. If the October 18 rezoning ordinance had gone into effect after expiration of the fifteen-day waiting period, L.C. Canyon could then have moved forward with plans to build on its property. Once it did that, rule 37 would be inapplicable by its terms, as L.C. Canyon's reliance in building on the property could not be undone by a Council decision to rescind. *See* McQuillin, *supra* ¶ 21 n. 3, § 13:72 (noting that once a municipal legislative body's "act has been carried out, the power to rescind does not exist"); *see also Sauter v. Mahan*, 95 Conn. 311, 111 A. 186, 187 (1920) ("[A] city has no power subsequently to reconsider or rescind a *completed* assessment lawfully made." (emphasis added)); *Schieffelin v. Hylan*, 106 Misc. 347, 174 N.Y.S. 506, 511 (Sup.Ct.1919) ("When a municipality, or one of its boards or departments, has lawfully adopted a policy, or has resolved to proceed in a certain way, and that policy or action has been carried out, it cannot be rescinded or changed, though a different policy or action might originally have been equally valid. The policy having been determined, and the action taken and carried out under authority of law, the power to change or rescind does not exist."). We are a far cry from that scenario here, however, where the rezoning ordinance never even went into effect and L.C. Canyon accordingly did nothing in reliance on it.

6. McQuillin, *supra* ¶ 21 n. 3, § 13:72. *See also, e.g., Anderson v. Judd*, 158 Colo. 46, 404 P.2d 553, 557 (1965) (en banc) ("The law is clear that a municipal legislative body may reconsider its actions and rescind an ordinance that has been previously enacted, or enact an ordinance that

¶ 23 L.C. Canyon is right to note that a motion to reconsider the October 18 rezoning ordinance would have been untimely under Robert's Rule 36 because it was not made within one day of the initial vote. But that begs the question whether a rule 36 reconsideration motion is the only appropriate mechanism to undo the rezoning ordinance under Robert's Rules. It is not. Rule 36 reconsideration is a powerful parliamentary procedure in that it allows a member of a deliberative body to make a motion that will take "precedence of all new questions"—a priority that a motion to rescind lacks.[7] But once the narrow time window for this special power of "reconsideration" closes, a rescission motion can be made "at any time" (subject to the limitations of rule 37).[8]

¶ 24 Thus, it is true that a rule 36 motion to reconsider would have been untimely on October 25 (when the Council voted to reconsider the rezoning ordinance) and on November 1 (when the Council voted to rescind the rezoning ordinance). But the Council retained the power of rescission under rule 37; such a motion is not subject to the same time limitations that govern under rule 36.[9] We accordingly uphold the Council's rescission of the October 18 ordinance under rule 37.

## C

¶ 25 Because the County Council retained and properly exercised the power to rescind the rezoning ordinance prior to its effective date and L.C. Canyon had no reasonable reliance interests that were undermined by the County's rescission, we also hold that L.C. Canyon's takings claim fails as a matter of law. L.C. Canyon rightly notes that to succeed in its takings claim, it must establish: (1) that it has a protectable interest in the property in question, and (2) that the interest has been taken or damaged by government action. L.C. Canyon cannot demonstrate that it has a protectable interest in the zoning benefit it now asserts has been taken by the County Council, and the County

has previously been defeated, at any time before the rights of third parties have become vested...."); *S & A Marinas, Inc. v. Leonard Marine Corp.*, 875 S.W.2d 766, 769 (Tex.Ct.App.1994) ("[A municipal corporation] has the discretion to reconsider an action it has taken with regard to any matter that has not become final."); *Ellard v. State*, 474 So.2d 743, 751–52 (Ala.Crim.App. 1984) ("The courts hold or recognize that administrative agencies may reconsider and modify their determinations or correct errors on the grounds of fraud and imposition, illegality, irregularity in vital matters, mistake, misconception of facts, erroneous conclusion of law, surprise, or inadvertence. Any deliberative body, administrative, judicial or legislative, has the inherent power to reconsider an action taken by it unless the action is such that it cannot be set aside or unless reconsideration is precluded by law. The power of administrative reconsideration is consistent with the principle that 'notions' of administrative autonomy require that the agency be given a chance to discover and correct its own errors." (citations omitted)); *Ceresa v. City of Peru*, 133 Ill.App.2d 748, 273 N.E.2d 407, 409 (1971) ("From the foregoing facts and from the briefs of the parties it appears that there is some confusion in the use of the term 'reconsider'. In one sense reconsider is a parliamentary term which in its strict sense enables a deliberative body by a favorable vote on such a motion, to vote again on a prior action of the deliberative body. In its general non-technical sense reconsider refers to the further or renewed opportunity to think again about a matter and take some action with regard thereto. In this latter sense a deliberative body such as a city council, has continuing power and authority to consider from time to time matters within its jurisdiction and generally speaking any such reconsideration or renewed consideration may be independent of any action which it has taken or not taken in the past." (citations omitted)).

7. ROBERT'S PARLIAMENTARY LAW 84 (Bicentennial ed.1975); *see also id.* at 83 (noting that "the mere making of the motion" to reconsider "suspends for a limited time all action" until the motion is considered).

8. *See id.* at 85 (explaining the difference between a motion to reconsider and a motion to rescind and noting that "the motion to reconsider cannot be made except at the meeting during which the resolution to be reconsidered was adopted" or on the following day, "whereas the motion to rescind may be made at any meeting regardless of the time that has elapsed"); *id.* at 88 (noting that "[i]f no one makes" a motion to reconsider on the day of the underlying vote or on the following day, "the vote cannot be reconsidered, but at any time the society may rescind the action taken").

9. *Ferguson v. Metro. Emp. Benefit Bd. of Nashville*, 1985 Tenn.App. LEXIS 3067, *8 (Tenn.Ct. App.1985) (noting that a motion to reconsider under rule 36 must be made "only on the day of the original vote" but that "[t]hereafter, a body may reverse prior action by voting a motion to rescind").

is accordingly entitled to summary judgment on the takings claim as well.

¶ 26 L.C. Canyon possesses *a* protectable interest in the property in question. But that interest is not the type of interest that L.C. Canyon now argues was taken by the November 1 rescission. L.C. Canyon purchased the property in May 2006. At that time, L.C. Canyon knew that the property was zoned FR–20 and that it had already been denied a rezoning and a variance for its preferred use of the property several months earlier. L.C. Canyon thus had at most a unilateral hope that the Council would rezone the property from FR–20 to FR–2.5. In fact, in purchasing the property L.C. Canyon chose not to make its contractual duty to buy the land contingent on its ability to secure favorable rezoning treatment from the County.

¶ 27 L.C. Canyon has no viable takings claim because it lacks a protectable property interest in the FR 2.5 zoning approved in the October 18 ordinance (and subsequently rescinded on November 1). A just compensation claim must be based upon the taking of private property. Thus, to prevail on such a claim, L.C. Canyon must prove that at the time of the alleged taking, it had an established property interest in the FR–2.5 zoning that it alleges the Council has taken, not merely a unilateral hope or expectation that it would one day acquire such an interest in that property. This principle is clear in our case law, where we have held that in order to succeed on a takings claim, a plaintiff "must possess some protectable interest in property before that interest is entitled to recover." *Colman v. Utah State Land Bd.*, 795 P.2d 622, 625 (Utah 1990).

¶ 28 Before a property interest will be considered protectable under article I, section 22 of the Utah Constitution, a plaintiff must demonstrate something more "than a unilateral expectation of continued privileges." *Strawberry Elec. Serv. Dist. v. Spanish Fork City*, 918 P.2d 870, 878 (Utah 1996). Rather, a plaintiff must show a " 'legitimate claim of entitlement to it,' " *Patterson v. Am. Fork City*, 2003 UT 7, ¶ 23, 67 P.3d 466 (quoting *Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 577, 92 S.Ct.

2701, 33 L.Ed.2d 548 (1972)), or in other words, a "vested, legally enforceable interest," *Bagford v. Ephraim City*, 904 P.2d 1095, 1099 (Utah 1995). Such a "vested property interest," moreover, must be evidenced by "a completed, consummated right for present or future enjoyment." *Smith v. Price Dev. Co.*, 2005 UT 87, ¶ 26, 125 P.3d 945 (internal quotation marks omitted). Federal law is to the same effect. *See Webb's Fabulous Pharmacies, Inc. v. Beckwith*, 449 U.S. 155, 161, 101 S.Ct. 446, 66 L.Ed.2d 358 (1980) (stating that "a mere unilateral expectation or an abstract need is not a property interest entitled to protection" under the Fifth Amendment's prohibition against the taking of private property for public use without just compensation).

¶ 29 For reasons explained at length above, L.C. Canyon has not demonstrated that it has any vested right in its preferred zoning of the property in question. So long as the October 18 ordinance had not yet taken effect, the Council was free to rescind it, provided L.C. Canyon did not reasonably rely on the Council's October 18 action (which it concedes it did not). The November 1 rescission rendered nugatory the Council's earlier vote to rezone from FR–20 to FR–2.5. In other words, L.C. Canyon's argument that the Council has taken FR–2.5–zoned property and unconstitutionally reverted it to FR–20–zoned property fails because the Council never gave such a zoning benefit in the first place. L.C. Canyon's takings claim accordingly fails as a matter of law, and the district court was right to enter summary judgment in the County's favor.

### III

¶ 30 The district court correctly analyzed the issues before it and rightly entered summary judgment in favor of the County and against L.C. Canyon. We accordingly affirm.

¶ 31 Chief Justice DURHAM, Justice PARRISH, and Justice NEHRING concur in Justice LEE'S opinion.

¶ 32 Having disqualified himself, Associate Chief Justice DURRANT does not participate herein.